GEORGE W. SPARKS, EDWARD MOORE, WILLIAM G. LOWE, ROBERT D. HICKS, AND HENRY S. MCCOMB,

*vs.*

THE PRESIDENT, DIRECTORS AND COMPANY OF THE FARMERS' BANK OF THE STATE OF DELAWARE.

*New Castle, Sept. T.,* 1868.

An issue should not be directed to try a question of mixed law and fact; nor a question which simply involves a legal conclusion, from uncontroverted facts.

An application to direct an issue to try the question whether the office of cashier of a bank was an annual one, refused.

An application for an issue to try the amounts and dates of the defalcations of a cashier, also refused.

The granting of an application to direct an issue to be tried by a jury, is a matter to be determined by the sound discretion of the Court.

Upon a bill, filed by sureties for the cashier, for an injunction against the suit of a bank upon his official bond, an order was made for the production at the banking house for the inspection of complainants, their agents, solicitors, &c., of minutes, official bonds, by-laws and ordinances, account books and other papers of the bank, pertinent to the matters in controversy.

INJUNCTION BILL.—APPLICATION FOR ISSUES. - PRODUCTION OF DOCUMENTS.—The complainants' application arose in the course of proceedings upon a bill in equity, to restrain the collection of the official bond of Joseph A. Heston, late cashier of the Farmers' Bank.

Heston was alleged to have made certain defalcations. The pleadings disclosed that the principle controversy was, whether the office of cashier was an annual one The bonds were dated, one, January 1st, 1862, and the other, January 6th, 1865; and the complainants contended that each rendered the sureties liable only for defalcations occurring in the years in which the bonds were taken,

29

respectively.   This raised the other important question of fact as to the precise amounts and dates of the alleged defalcations.*

After the filing of the answer the following order for production of document was entered :

And now, to wit, this fifth day of February, A. D. 1868, upon bill and answer thereto filed, and it appearing by the answer of the defendants that certain books, documents, and paper writings hereinafter specified, which are referred to in the bill as containing evidence relevant to the case upon the part of the complainant, are in the custody and control of the defendant.   On motion of Thomas F. Bayard Esq., solicitor for the complainants, it is ordered by the Chancellor that the defendants do, until further order, have at their banking house in the city of Wilmington, the books, documents and papers hereinafter specified, and that the complainants, their solicitors and agents, be at liberty, at all seasonable times, to inspect and peruse the same, or such parts thereof as are hereinafter designated, and to take copies thereof and extracts and abstracts therefrom.   And it is further ordered that the said books, documents and paper writings be produced by the defendants at the hearing of this cause.

The following are the books, documents and paper writings which are subject to this order, viz :

1. So much and such parts of the Minutes of the proceedings of the Board of Directors, of the defendants, at Dover, since the creation of the Branch Bank at Wilmington, as shew or in any way relate to any and every election, or appointment, or continuance in office by the

---

*The facts of this case, as alleged in the pleadings, and ascertained upon the proofs, will be found fully stated in report of this case upon the merits, *post.*

said Board, of any and every cashier of said Branch Bank at Wilmington, and particularly of Joseph A. Heston, late such cashier :—Also, so much and such parts of said Minutes as shew that any and every cashier of said Branch Bank, and particularly the said Joseph A. Heston, took an official oath or affirmation as such cashier, and the times when such oaths or affirmations were respectively taken, together with all such oaths or affirmations filed among the papers of said Board, and particularly the oaths of office of the said Heston, which are in the answer specified.

2. So much and such facts of the Minutes of the proceedings of the Board of Direction of the said Branch Bank at Wilmington, as shew or relate to the election of the said Joseph A. Heston to the office of cashier of said Branch Bank in the month of February or of March, A. D. 1858.

3. The several official bonds executed by said Joseph A. Heston as cashier of said Branch Bank, and which are specified in the answer.

4. All by-laws and ordinances of the defendant, the said corporation.

5. The cash book of the said Branch Bank at Wilmimgton kept since the first day of January 1858, also the monthly and semi-annual statements and balance sheets of the said Branch Bank during the same period : also all accounts of the said Joseph A. Heston with the defendants ; and also all other such accounts, entries or memoranda contained in any books or documents of said Branch Bank, which may be relevant to the purpose of shewing any and all acts and transactions of the said Joseph A. Heston, and whether any defalcations were committed by the said Joseph A. Heston while he was cashier of such Branch Bank and the times at which, and the amounts in which, such defalcations, if any, were, respectively, committed.

At the September Term, 1868, *T. F. Bayard,* for the complainants, moved that certain issues be directed to be tried at the bar of the Superior Court, and submitted the following as the form of the issues to be directed.

"1st. Whether any and what sum or sums of money, "belonging to the said corporation defendant, were "abstracted by Joseph A. Heston, cashier, since January "29th, 1862, and at what dates and times, respectively, "were such acts of abstraction committed by the said "Joseph A. Heston, cashier?

"2nd. Whether the office of cashier for the branch of "the said corporation defendant, at Wilmington, which was "held by the said Joseph A. Heston, from February, 1858, "until March, 1867, was or was not *an annual office to which,* "*regularly, every year an election was held* by the General "Board of Directors of the said corporation defendant, at "their annual meeting held at Dover in the month of Jan- "uary each year."

The second proposed issue having been, in the first instance, framed as above, was afterwards amended by the substitution, in lieu of the words above printed in italics, of the following, "*filled regularly every year by an election.*"

Both forms are alluded to by the Chancellor in the course of his remarks made at the time of refusing the motion.

*E. G. Bradford,* for the defendant, opposed the application upon the ground that one of the proposed issues was not an issue of facts, but of law, and the other was not one "proper to be tried by a jury."

*First.* As to the sums of money abstracted, this is not the only breach charged, but false entries also.

If the office is not annual there is no necessity to inquire, by issue, as to the abstraction of money, because that is admitted and the liability is certain.   On the other hand, if the office is annual, then the sureties, I admit, are not liable.

We are to shew the *fact* of defalcation, amounts and dates.   This is not matter proper to be tried by a jury, resting upon accounts very voluminous and such as cannot be intelligently considered by a jury.  The evidence being wholly documentary, justice in such a case could not be done.

At all events the matter in issue could not now be tried by a jury, nor until the Court shall determine whether the office is annual or indefinite.

*Second.*   Whether the office is annual or indefinite is a question of law,—a legal conclusion from facts—from a combination of facts.

The answer admits all the facts upon which this question can rest, viz :—the fact of an annual election. Besides, the question rests upon documentary evidence, the effect of which is a question of construction for the Court and not for a jury.   No fact controlling this question is disputed.   Upon the trial of an issue, if ordered, the Superior Court would necessarily instruct the jury, and the result would be, simply, to substitute that court in the place of this one.

*T. F. Bayard*, for the complainants.

1. The phrase, "proper to be tried by a jury," applies to any matter of fact strongly contested.   2. *Dan. Ch. Pr.* 1192, 1285—6. (*Edn. of* 1851.)   When such a question is, necessarily, to be determined, the Court will direct an issue, and this is so whether the evidence be oral or written.

The fact that such an issue involves complicated transactions is not an objection to its being tried by a jury. *Adam's Eq.* 815   In many of the States the discretion to grant or refuse an issue has become merely nominal.

2. We deny that the question, whether or no the office was an annual one, is a question of law.   On the contrary, it is a question of fact, and one which should be submitted to a jury.   We are willing to take an issue in any form or terms, the result of which would settle the question, whether the office continued beyond one year.


THE CHANCELLOR :—

The application is one made to the sound discretion of the Court.   With respect to the first proposed issue, it does not appear to me to be such an one as, in the proper exercise of that discretion, should be ordered.   The matter involved arises upon complicated accounts which can be tried by the Court more satisfactorily than by a jury. Besides, the time of the alleged defalcations is admitted, by the defendant, to be such, that if the office of cashier was an annual one, the sureties are not liable.

The object of the second issue, as proposed, is, to establish the real defense, which is, that even if there were defalcations, they are not covered by the two bonds of these sureties.   The ground on which this defense rests is, that there was an election in each year by the general board, the effect of which was to constitute this an annual office, the term created by one, expiring with the next, and the bond covering only the transactions of the year which constituted the term for which it was taken.

Now this defense, as set up by the bill, embraces two elements; first, that elections were held; this is a matter of fact ; secondly, their effect in constituting the office an annual one.   The answer admits the first and denies the

second. The issue first asked, comprehended both questions, but the modified issue, the first only.

I can direct no issue in any way applying to this subject, because,

*First.* The fact of an election every January, is admitted, and were it not, it rests upon documentary evidence.

*Secondly.* The question whether "the election" created a new office or only recognized and sanctioned an authority already existing, and which even without it would have continued, is a purely legal conclusion. In some sense a fact, it is, yet, a conclusion from other facts.

The bill so puts it, as a conclusion resting upon acts, admissions, usages, &c. But suppose, as complainants will contend, that the simple transaction *per se* constituted an election in the proper sense, and the office an annual one,—still it is no less a legal conclusion though brought nearer to the premises.

What, then, would be the result of an issue embracing, in any terms the question, whether the election made the office annual, or it remained indefinite? Simply a struggle before the jury as to the legal effect of uncontroverted facts. They would not decide this without instruction from the Superior Court, which would, in effect, transfer the case to that Court.

The application must be refused.