THE AETNA CASUALTY AND SURETY COMPANY, a corporation of the State of Delaware,

*vs.*

THE MAYOR AND COUNCIL OF WILMINGTON, a Municipal corporation of the State of Delaware, and AUGUST EDWARD WALSEN.

*New Castle, May* 19, 1932.

*Aaron Finger,* of the firm of Richards, Layton and Finger, for complainant.

*Harry K. Hoch, City Solicitor,* for defendant Mayor and Council of Wilmington.

*Robert G. Harman,* for defendant Walsen.

THE CHANCELLOR: The solicitor for Walsen, the principal in the bonds on which judgments were entered, makes the contention that Walsen is entitled as of right to a trial before a jury of the issue of whether there was a shortage in his accounts as collector of taxes. He is not entitled as of constitutional right to have such trial afforded him by this court. *Mackenzie Oil Co. v. Omar Oil & Gas Co.,* 14 *Del. Ch.* 36, 120 *A.* 852; *Sparks, et al., v. President, etc., of Farmers' Bank,* 3 *Del. Ch.* 225.

If he is allowed a jury trial, it is only because the court in the exercise of its discretion deems the issue to be one that should be sent to a jury. In the opinion filed when the demurrer to the pending bill was disposed of, it was indicated that the usual course, in cases where judgment is entered by warrant of attorney for the penalty of a bond whose condition is for the performance of some collateral undertaking, is, if the creditor takes execution for more than is due, for the defendant to resort to a court of equity to restrain the execution; and the court would direct an issue of *quantum damnificatus* to be tried before a jury. This was stated by Chancellor Bates to be the rule in *Staats v. Herbert, et al.,* 4 *Del. Ch.* 508.

The same Chancellor, however, held in an earlier case that an application for an issue of *quantum damnificatus* was directed to the sound discretion of the court. *Sparks v. President, etc., of Farmers' Bank,* 3 *Del. Ch.* 225. That case is indistinguishable in principle from the one *sub judice.* The Chancellor refused to direct an issue in the *Sparks Case* because the matter involved arose upon complicated accounts which could be tried more satisfactorily before the court than by a jury. And such is the situation here, for the documents in which the collector's accounts are embodied are exceedingly voluminous and the accounts are multitudinous in detail. Accordingly, I conceived that the issue of shortage could be tried much more satisfac-

torily by the court than before a jury. The fact that the Chancellor in the *Sparks Case* predicated his refusal to send to the jury one of the issues because it presented a question of law, in no wise lessens the force of his ruling that the other one, which presented a pure question of fact determinable from complicated accounts, should likewise not be referred to a jury. The *Sparks Case* is therefore not distinguishable from the present one, as it is argued to be by the solicitor for Walsen.

I conclude then, on this branch of the case, that I should proceed to a decision of the question of fact as to whether the evidence shows a shortage for which Walsen and his surety are responsible, without referring the matter to a jury.

From the evidence, only one conclusion is possible. It is that a shortage is disclosed in the amounts shown by the auditor's report. Walsen was afforded every opportunity to point out from the books and documents wherein the amounts claimed as due, and evidenced by the books and documents, were erroneous. He failed to rebut a single item of the disclosed liability. His only defense was one of law, viz., that if there was a shortage it was occasioned by the conduct of deputies or clerks in his office, for which he was not legally responsible. The merits of that defense will be presently considered. The city makes no claim that Walsen himself abstracted money from the tax funds. It does not know who took them. There is therefore no issue present in the cause of Walsen's personal integrity. It does appear that some of the receipts for tax payments which never reached the city treasury, were in Walsen's handwriting. But with respect to these, all that is contended is that they show in the instances covered by them that Walsen is chargeable at least with negligence in not discovering that the payments shown by the receipts were abstracted by some one under him.

There being no doubt as to the existence of a shortage shown, it is now in order to determine the question of law

raised by Walsen, viz., are Walsen and his surety liable therefor under the terms of the bonds? The condition in each bond is as follows:

"If the said Principal shall faithfully perform and discharge all the duties of said office as they now or may hereafter exist during the term for which he has been elected or appointed and qualified then this obligation shall be void, etc."

The Mayor and Council provided by ordinance that the collectors "shall deposit each banking day all moneys collected by them for the use of the city, to the credit of 'The Mayor and Council of Wilmington', in the designated depository." The city duly designated an active depository under the ordinance.

The duty, then, of making daily deposits of tax moneys collected by Walsen was one of the duties of his office which his bond required him to faithfully perform and discharge.

The collector was allowed two deputies under the law. Whatever collections were made by them were collections which the law regards as having been made by the collector. "The principal and his deputy or deputies are regarded as but one officer and that officer the principal," is the language of the court in *Butler v. Milwaukee*, 119 *Wis.* 526, 97 *N. W.* 185, 186. While this language may in certain circumstances be subject to limitations, yet it admits of no qualification when applied to the proposition, that money taken in at the tax office by a deputy must be regarded as money collected by the collector.

It matters not therefore whether the collector himself or his deputies received the money of the taxables. In either case all that was paid into the tax office was collected by the collector and he was required by the ordinance and obligated by his bond to make daily deposit of the daily receipts in the designated depository.

This he did not do. The books and records in evidence show that during each of Walsen's two terms of office he failed to make deposit to the credit of the city of all the

moneys which were collected. There was a shortage for the first term and also one for the second.

Walsen does not seriously contest the fact of the shortages. His answer to them is that he himself did not misapply any of the funds, that if there was any shortage (there can be no doubt that there was), his deputies or clerks must be the guilty parties, and if so, he is not responsible for their shortcomings. He takes the position that the law does not make of him an insurer of the moneys collected; that all that is exacted of him is reasonable care and diligence in the performance of his duty and that he is not shown to have been derelict in this regard.

Where the obligation of an official bond requires a custodian of public funds to safely keep and pay them over, it is no defense to an action on the bond for the defendant to say that the funds were lost by theft, fire, failure of the bank in which the funds were deposited or embezzlement on the part of a subordinate. In *United States v. Prescott*, 3 *How.* 578, 11 *L. Ed.* 734, the receiver of public moneys was held liable on his official bond for failure to "truly, and faithfully, keep safely" the money collected by him, notwithstanding the loss of the money was due to a felonious taking, stealing and carrying away of the same, in spite of the defendant's ordinary care and diligence.

This case is said by the solicitor for Walsen to have been practically overruled by *United States v. Thomas*, 15 *Wall.* 337, 21 *L. Ed.* 89. To this, I cannot agree. The *Thomas Case* at several places in the opinion recognizes the decision in *United States v. Prescott* as correct, but does criticize some of the language used by the court as being too broad and sweeping. The *Thomas Case*, while recognizing that a bond requiring the safe keeping of funds imposes the duty of an insurer, on the custodian, nevertheless excepts from that rule a case where the loss is occasioned by armed rebellion or an act of God.

That these two cases from the United States Supreme Court are not in conflict but together hold the law to be that

an obligation to safely keep cannot be excused except by some such circumstance as armed rebellion or an act of God, is clearly evident from *Smythe v. United States,* 188 *U. S.* 156, 23 *S. Ct.* 279, 47 *L. Ed.* 425. In the latter case loss by fire without fault on the part of the superintendent of the mint was held to be no such exculpating circumstance as would relieve the superintendent of his obligation to safely keep the coin, etc., committed to his custody. In this case the court expressed the only ground of defense to be such as is attributable to overruling necessity or to the public enemy.

It is unnecessary to review the authorities further. While some dissent may be found to the principle laid down by the cases from the Supreme Court, yet the weight of authority lies on the same side with them. 22 *R. C. L. p.* 468, § 136.

In the instant case there is no provision which says in terms that the collector shall "safely keep" the moneys collected. The ordinance however obliges him to make a daily deposit of "all moneys collected." The obligation to make the daily deposits is just as absolute in its requirement, however, as if he were required to safely keep them. On this point, the case of *Boyden v. U. S.,* 13 *Wall.* 17, 20 *L. Ed.* 527, appears from the report to be relevant, for the obligation of an insurer is held in that case to attach to a receiver of public moneys who is under obligation "to pay over" when required by the Secretary of the Treasury. The requirement to pay over or, as here, to make daily deposit, being as absolute as to safely keep in the cases cited, the authorities before referred to are applicable. The duties of a receiver of the public funds in such cases are not to be tested by the rules applicable to an ordinary bailee. The terms of his bond and the supplementing statute or ordinance, impose upon him the stricter rule of liability which the cited cases establish. In *Commonwealth v. Comly,* 3 *Pa.* 372, Chief Justice Gibson observed that "the keepers of the public moneys, or their sponsors, are to be held strictly to

the contract, for if they were to be let off on shallow pretences, delinquencies, which are fearfully frequent already, would be incessant."

The solicitor for Walsen cites four cases upon which he especially relies. They will now be noted and commented upon. The first is *United States v. Thomas*, 15 *Wall.* 337, 21 *L. Ed.* 89. This case I have already referred to. It holds against Walsen's contention. The next is *Ross School Fund Commissioner v. Hatch*, 5 *Iowa*, 149. That case is not pertinent, because the statute in terms exacted only the duty to use "reasonable diligence and care." The third case is *State v. Copeland*, 96 *Tenn.* 296, 34 *S. W.* 427, 31 *L. R. A.* 844, 54 *Am. St. Rep.* 840. It appears to be in conflict with the United States Supreme Court cases which I have accepted as correctly expounding the law dealing with the subject. I think it is not in line with the prevailing trend of the authorities. Finally the case upon which reliance is most confidently based by the solicitor for Walsen is *State v. Kolb, et al.*, 201 *Ala.* 439, 78 *So.* 817, 1 *A. L. R.* 218. With respect to that case, it seems to me to be clearly distinguishable, for the reason that there does not appear to have been any such duty laid upon the officer as is found in the instant one. The court examined the law to ascertain if any obligation was imposed upon the officer to answer for the defaults of his clerks. It found nothing on which to predicate such an obligation, as is found here. Furthermore, it is to be noted, that the court concluded that a statute which had imposed such an obligation had been repealed. These comments, I think, serve to show wherein the case is not applicable to the instant one.

If the contentions which evoke the foregoing comments were all that had been made at the argument and on the briefs, it would be proper to conclude consideration of the case at this point.

The solicitor for Walsen, however, makes two other contentions which he is entitled to have the court pass upon.

One of these is that inasmuch as the collector's deputies

were required by law to give bond to the city and not to the collector, it must follow that the law does not contemplate that the collector should be responsible for the derelictions of his deputies. It may be that with respect to some kinds of officers, the nature and character of the duties imposed may be such as to lead the court to conclude that the exacting of bonds from subordinates direct to the State, county or municipality, would impliedly exonerate the bond of the superior officer from liability for the acts or omissions of his subordinates. *Johnson v. Milwaukee,* 147 *Wis.* 476, 133 *N. W.* 627, illustrates such a case. The question in such cases is one of construction of a statute. Where the statute or ordinance is worded as in the one now before the court, I cannot conceive that the duty to make daily deposit of all moneys collected rests less absolutely upon the collector by reason of the fact that his deputies are also required to bond themselves to the city. If it were otherwise, the protection to the city afforded by the bonds would in the case of such an office as tax collector for a large metropolitan district be an elusive not to say vain thing. It would require the city to explore the detailed ramifications of each subordinate's conduct with the view of locating each item of default, which is small in relation to the total, and ferreting out the particular individual identified therewith, a task well nigh impossible in many cases of accomplishment. This would be particularly so, if the method of the wrongdoer's operation consisted in the mere abstraction of cash. If the head of the office, who selects his subordinates and who is in constant charge and supervision of them, is held responsible for the net result of the work of his office, the protection to the city which the statutory bond is designed to afford, will not be jeopardized. I am of the opinion that the giving of bonds by the deputies was not intended by the statute to lessen in anywise the absolute duty of the collector to make the daily deposit of all moneys collected by him and his deputies.

But even if it should be held that the bonding of the

deputies relieved the collector of responsibility for their defaults, certainly a corollary of that proposition should be that when a shortage is shown, the collector, before he can be exonerated of liability, ought to be required to show that one or more of his deputies and not he, had been at fault. That burden should rest upon him. Walsen, however, has not shown who the offenders were. All that he says is that he personally was guilty of no wrongdoing. He seems to take the attitude that it is for the city to act the detective for him and discover the evidence, long after the event, which he himself, while the acts were transpiring, failed to obtain. So far as appears, persons other than a deputy may have made way with the funds. Who got them is lost in obscurity; and Walsen appears to think because the city cannot penetrate the veil which he confesses that he, the responsible officer, cannot remove, therefore the bonds of his which the city holds are acquit of liability.

There is no evidence that Walsen himself was culpable in a criminal sense. I cannot escape the conclusion, however, that he was negligent in attending to his office. The tax year commences July 1st and there is a great rush of business in the office for some time thereafter. Yet at that busy time, it appears to have been Walsen's practice to absent himself from his office in attendance upon a military encampment. However praiseworthy may have been his attention to his duties as a member of the militia, that fact can have no relieving effect upon his official duty as collector. If he could not get excused from his military duty, he should not have taken office as collector unless he was prepared to assume responsibility for what occurred in his office during his absence. While he was absent in camp, he exercised practically no supervision over the office. It was run by his deputies. Certainly, whatever effect the giving of bonds by his deputies may have, it cannot be that Walsen's responsibility to his official duty was so far relieved as to permit of his abandonment of all oversight during periods when large sums were coming in. Neither can I reconcile a

faithfulness in the performance of his duty with his failure to check each day's receipts as evidenced by the records in his office with the amount of the daily deposit. Attention in this regard would have promptly revealed the seepage of funds.

So that even if we allow the bonding of the deputies to have some relieving effect upon Walsen's liability, yet it appears that he is chargeable with a negligence for which he can, in no aspect of the matter, be relieved.

It is also argued by the solicitor for Walsen that it was the duty of the City Auditor to make certain periodical audits of the tax collector's accounts, that the City Auditor did not make the audits required of him, that had he done so the shortages would have been detected and the present trouble avoided, and that, because of the auditor's failure to do his duty, he, Walsen, should not be held responsible. This argument amounts to saying that the fault of one officer is an excuse for the fault of another in the performance of his own independent duties. A mere statement of such a proposition, without more, carries its own refutation.

I think I have noticed all the contentions advanced by the solicitors. The result is that the preliminary injunction should be dissolved and the bill dismissed.

Decree accordingly.