STATE HIGHWAY COMMISSION OF THE STATE OF NEW JERSEY, APPELLANT, v. LINCOLN TERMINAL CORPORATION, RESPONDENT.

Submitted October 28, 1932—Decided January 31, 1933.

For the appellant, *William A. Stevens,* attorney-general, *Walter H. Bacon, Jr.,* and *George T. Vickers.*

For the respondent, *Arthur T. Vanderbilt* and *John Milton.*

The opinion of the court was delivered by

Case, J. The state highway commission appeals from a judgment entered upon a jury verdict of $375,000 in the Hudson County Circuit Court before Judge Thomas Brown. That trial was on an appeal from a report and award of commissioners on the condemnation of lands owned by Lincoln Terminal Corporation and taken by the state highway commission for the purposes of the highway construction known as the "viaduct." The lands bound on the Passaic river and extend longitudinally in an easterly direction through remaining lands of the owner.

Appellant's first point is that there is no evidence in the case to support the verdict of the jury. The point thus sought to be made is not the subject of an appeal. As was said by our present Chief Justice in *Van Sciver* v. *Public Service Railway Co.*, 96 *N. J. L.* 13: "The only matters properly coming before it (viz., an appellate tribunal on appeal) for determination are alleged errors committed by the court during the trial of the cause." Appellant cites *Ratz* v. *Hillside Bus Owners' Association*, 103 *Id.* 502, in support, and the opinion in that case does contain the following expression: "The fifth ground of appeal, that there was no evidence to support the verdict of the jury, which is cognizable in this court, was not argued at all." That observation, however, was an *obiter dictum* inasmuch as the ground concerning which the remark was made was not argued by counsel and was not considered by the court in arriving at its conclusion. In *Klein* v. *Shryer*, 106 *Id.* 432, Mr. Justice Parker, speaking of a ground that was almost precisely the same, namely, that "there was no legal evidence to support the judgment," disposed of the argument by saying: "Such a reason points to no judicial action to be reviewed." It is also to be observed that the Ratz opinion, notwithstanding the *obiter* above mentioned, quotes with approval the language of the Chief Justice in the Van Sciver case, *supra*.

Neither is there merit in the argument advanced, which is that because the various figures estimated by the witnesses to be the value of the property taken, plus the damage to the re-

maining property, are neither higher or lower than the finding by the jury, there is no evidence to support the verdict. This court found contrary to that contention in *State Highway Commission* v. *Mayor, &c., of Dover*, 109 *N. J. L.* 303. There was much evidence before the jury other than the opinion testimony by the real estate experts: evidence of the physical aspects of the property; the volume of business done; the arrangements of the tracks and storehouses and of the loading and unloading devices; the relationship of land transportation to water transportation; the interference by the proposed improvement and particularly by certain of the piers with the load movements; the leases and rentals; all of which was seasoned by the jury's view of the premises. A jury, under such circumstances, need not find in the precise figures of an expert's estimate. See *Somerville and Easton Railroad Co.* ads. *Doughty*, 22 *N. J. L.* 495, (at *p.* 499). The greater includes the less. When a witness testifies that in his opinion an owner is damaged in a certain sum, he necessarily is understood to testify that the owner is damaged in every lesser amount. It is for the jury, within reason, to decide whether all or some part of the figure that springs out of the witness' opinion is the actual damage.

The appellant's second point is that the jury disregarded and rejected all of the testimony and evidence received in the case but nevertheless rendered a verdict. This point, for the reasons already given, is not properly before us; also, it has, in our opinion, no merit.

The third point is that the verdict of the jury is contrary to the charge of the court. It would serve no purpose to review that portion of the charge to which it is said the verdict is contrary. The language is not excepted to, no ground was assigned with respect thereto and no error is alleged. That which appellant calls error and attempts now to present was not a judicial action and is not properly before us for review. We may note, however, that we have discovered no contrariety between the verdict and the charge.

The fourth and last point is that the trial court committed harmful error in charging the jury thus:

"In considering your view, or applying it to this case, bear in mind that you are not to take that view as evidence in the case."

The view here referred to is the view had by the jury of the property under condemnation in accordance with section 12 of the Eminent Domain act. *Pamph. L.* 1900, *ch.* 53, *p.* 79; 2 *Comp. Stat., p.* 2182. The language excepted to does not fully reproduce the court's instructions in that respect. The court, in delivering the above quoted sentence, said:

"The court has cited the issues to you, and at the opening of the case the court instructed you as to your view of the premises in question. In considering your view, or applying it to this case, bear in mind that you are not to take that view as evidence in the case. You are to use your view so that you will better understand the testimony that was given here under oath."

On the taking of the exception and before the jury retired, the court added:

"The court feels that the upper court has clearly decided that proposition to the effect that a jury has the right to view a property and what they learn by that view is to be used and applied to a better understanding, or an understanding of the evidence that is adduced, and the view by the jury is not testimony in the sense that testimony is adduced in court. The jurors act in the capacity of jurors; and not as witnesses, to go out and see the property and form an opinion."

The appellant's contention is that the view had by the jurors was evidence in the legal acceptation of that word and was to be received and acted upon as such.

The precise statutory language by which the view by the jury is authorized and directed is found in section 12, *supra,* as follows:

"The said Circuit Court * * * shall * * * frame the issue between the parties and direct a jury to be struck and a view of the premises and property to be had * * *."

It is clear that the legislature anticipated that the jury would, by the experience of its view, be better enabled to determine the issue. The opportunity to a jury to view the *locus*

of an issue is not peculiar to the Eminent Domain act. The Jury act (3 *Comp. Stat., p.* 2964), provides in section 31 that a special writ of *venire facias* may issue directing jurors to view the place in question "in order to their better understanding the evidence that will be given on the trial." The Evidence act (2 *Comp. Stat., p.* 2216), provides in section 30 that if it shall appear to the court that an inspection of a property would aid in ascertaining the truth of any matter in dispute, it shall be lawful for the court to permit an inspection by the jury. While the language in the several statutes varies, nevertheless the similar function of having a jury inspect the premises suggests similarity of purpose.

In *Hinners* v. *Edgewater & Fort Lee Railroad Co., 75 N. J. L.* 514, the trial court, in effect, told the jury that they might make use of their view of the premises in forming their judgment of the testimony and in reaching an opinion upon its consideration and that their opinion upon the questions they were to decide should be based upon the testimony as thus understood by them and applied to what they had seen; and this court, on appeal, said that that charge was correct. The purport of the charge in the instant case was fairly in line with the thought of the language thus approved and was very likely intended to be a paraphrase thereof. Mr. Justice Garrison, in writing the Hinners opinion, expressed the personal view, *obiter,* that the limited function of an ordinary jury, on view, was not at all applicable to condemnation proceedings; but while we recognize some difference, we think that the cleavage is not complete.

That the view has by no means the place with a condemnation jury that it has with condemnation commissioners is manifested by the respective statutory provisions. Section 6 of the Eminent Domain act, *supra,* provides that "the commissioners, having first taken and subscribed an oath or affirmation * * * shall meet at the time and place appointed and proceed to view *and examine* the land or other property, and make a just and equitable appraisement of the value of the same, and an assessment of the amount to be paid by the petitioner * * * which report shall be made in writing

\* \* \* and filed \* \* \*." Sections 12 and 13 of the act provide with respect to the appeal that "the said Circuit Court \* \* \* shall fix a day for the trial \* \* \* and shall also, at the same time, by order, frame the issue between the parties and direct a jury to be struck and a view of the premises and property to be had \* \* \*. The issue shall be tried in the same manner as other issues in said court are tried, and the jury shall assess the value of the said land or other property and the damages sustained \* \* \*." The commissioners view, examine, appraise, assess and report. The jury views, but the issue is framed by the court and not only is the issue *tried* but it is tried *in the same manner that all other issues in the court are tried.*

The view as it existed in the jurors' minds at the time of the charge was the sum total of all the impressions received by the jurors through the several physical senses on the occasion of the trip to the property. To establish such a mental state, grounded in an experience had outside a court session, beyond the supervision of the judge and unrecorded in any transcript of the trial, as substantive legal evidence in like position with and of the same value as that adduced in court would, we consider, be to try the issue in a manner different from that in which other issues in the court are tried.

Illustrative of the manner in which other issues are tried is the case of *Garland* v. *Furst Store,* 93 *N. J. L.* 127, wherein the appellant sought to have the judgment against it in the court below reversed for refusal of the trial judge to nonsuit or direct a verdict in appellant's favor. The fulcrum upon which the appeal turned was lack of evidence. The respondent contended that as there was a jury of view the observations of the jurymen were evidence in the case, and that as a court of appeal could not know what they saw, the verdict of the jury might not be set aside. Chancellor Walker, delivering the opinion for this court, reviewed the pertinent provisions of the Evidence act and of the Jury act and concluded that it was unnecessary to decide to what extent an inspection or view under either of these statutes might or might not be evidential, for, in no event, could either be conclusive and thus

prevent the court from controlling the issue as a matter of law. The opinion held that the question presented to a court of review should be decided upon what appears in the record brought up to the appellate tribunal, notwithstanding that a view was had by the jury. We think that these observations apply with almost equal force to a view had by the jury on the appeal of a condemnation case.

The appellant's complaint is that the court charged the jury that they, having viewed the premises, were "not to take that view as evidence in the case." The words "evidence" and "testimony" are not synonymous; the former is broader than, and comprehensive of, the latter. Yet the two words are sometimes used interchangeably, and it is apparent that the judge so used them when he said "and the view by the jury is not testimony in the sense that testimony is adduced in court." The "view" does not lend itself nicely to the limitations of a precise definition as to its place in the disposition of the issue. But, negatively, as we have found, it is not as evidence or testimony *adduced in court;* and therefore the charge was correct. And, affirmatively, it may be repeated from the Hinners case, *supra,* "that the jury's judgment of the testimony may in some instance be modified, and in extreme instances perhaps controlled, by the result of their view;" that "it may well follow, as to some testimony, that to understand it is to discredit it, while, as to other testimony, to understand it is to accept it even in the face of contradiction or denial;" and further, that "instances may be multiplied in which the jury might properly use its view to check up the testimony adduced by the parties, without any infringement by the jury of the rule that prohibits the importation into the case of outside, or even of inside, information through some other channel than that recognized by the law."

The judgment below will be affirmed.

*For affirmance*—TRENCHARD, PARKER, LLOYD, CASE, BODINE, DONGES, BROGAN, HEHER, KAYS, HETFIELD, WELLS, KERNEY, JJ. 12.

*For reversal*—None.