CITY OF BAYONNE, PROSECUTOR, v. STATE BOARD OF TAXES AND ASSESSMENT, LEHIGH VALLEY RAILROAD COMPANY ET AL. (272) ; EAST JERSEY RAILROAD AND TERMINAL COMPANY ET AL. (273) ; UNITED NEW JERSEY RAILROAD AND CANAL COMPANY ET AL. (274) ; CENTRAL RAILROAD COMPANY OF NEW JERSEY ET AL. (275).

WILLIAM A. STEVENS, ATTORNEY-GENERAL, PROSECUTOR, v. STATE BOARD OF TAX APPEALS, LEHIGH VALLEY RAILROAD COMPANY ET AL. (276) ; CENTRAL RAILROAD COMPANY OF NEW JERSEY ET AL. (277) ; EAST JERSEY RAILROAD AND TERMINAL COMPANY ET AL. (278).

CITY OF BAYONNE, PROSECUTOR, v. STATE BOARD OF TAX APPEALS, CENTRAL RAILROAD COMPANY OF NEW JERSEY ET AL. (279) ; EAST JERSEY RAILROAD AND TERMINAL COMPANY ET AL. (280; UNITED NEW JERSEY RAILROAD AND CANAL COMPANY ET AL. (281) ; LEHIGH VALLEY RAILROAD COMPANY ET AL. (282).

Argued November 29, 1932—Decided August 5, 1933.

Before Justices PARKER, LLOYD and HEHER.

For the prosecutors, *Edward P. Stout.*

For the East Jersey Railroad and Terminal Company, *Aaron A. Melniker.*

For the other railroad companies, *Robert J. Bain.*

For the United New Jersey Railroad and Canal Company, *Albert C. Wall.*

PER CURIAM.

These eleven cases are based on the claim that certain railroad real estate in Bayonne, consisting of main stem and second-class property in No. 280, main stem only in Nos. 276, 277 and 278, and second class property in the other cases, were valued too low by the state board. In Nos. 272, 273, 274 and 275 the valuations attacked are for 1930; in the other cases they are for 1931. As heretofore in cases of this character, there is a great mass of conflicting expert testimony on valuations. The board seems to have accorded, in general, less weight to the testimony of the experts for the prosecutors than to that of the railroad witnesses. That was its undoubed right; and, looking at the testimony in print, we are unable to see that the appraisement of that testimony was without justification. In many cases, the board adopted the figures of the railroad witnesses; in one or two, it cut even below them. In a number of cases it simply rested on its original valuations.

The board commented on the general depression in all values which became acute in 1929 and was in full force in 1930 and 1931. We think the comment was pertinent and justified. A nation-wide, not to say world-wide, situation of that kind is perforce a matter of common knowledge, and it would be folly to pretend to ignore it.

There are twenty-nine numbered parcels, and nine lettered parcels. We have given to all of them the best examination that the pressure of other equally important work permits.

In Case A, the nine and eighty-one hundredths acre tract, the original valuation for 1930 was $150,270 and for 1931, $171,675. On review the board adopted the latter figure for both years. The experts for prosecutors valued it at $245,000 and for the railroad at $196,200. The board was not required to accept either figure, and was entitled to rest on its own figures for 1931, and to refuse to consider a sale of neighboring property in 1928 as controlling.

Taking up the numbered cases, which follow in the brief for prosecutors, we find that the original valuations for 1930 and 1931 agree with the railroad valuations in Nos. 1, 24 and 25. We see no good reason for disturbing them.

In Nos. 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, the board adhered to its own original valuations, which carried a substantial increase in 1931 over 1930.

In Nos. 12, 13, 14, 15, 16, 17, 19, 20, 22, 23, 26, 27, 28, the original figures for 1930 were less than those for 1931, and on review, the 1930 figures were raised to equal 1931; and in 15, 16, 19, 20, were substantially larger than the railroad figures.

In No. 18 the question was whether the total valuation should be $80, $100, $120 or $200. The board originally fixed $120 for 1930 and $100 for 1931, and in view of testimony for the railroad company cut the 1930 valuation to $100. Just why this should be deemed of sufficient importance to argue in this court, we fail to see.

In No. 21 the original total valuation for both 1930 and 1931 was $4,642. The state experts claimed $9,090, and those for the railroad, $3,636. The board, unaffected by either set of experts, let its own original value stand, as it had a right to do.

In No. 29 the original value was $36,320 for 1930. The state experts doubled this for both years; the railroad witnesses conceded $45,400 which the board adopted for 1930. In 1931 the acreage had increased about twenty-six per cent.

and the board increased the valuation to $57,325 or at the same rate.

The other parcels, lettered B to K, inclusive (omitting the letter I) were reviewed only for 1931.

As to parcel B the original and final valuation agreed with the railroad estimate of $194,985, which according to the state claim, should be $649,950 or over thrice as much. Even the attorney-general, prosecutor, does not claim any such valuation, but argues from certain acreage valuations that the total should be $389,970, or exactly double the board valuation, *i. e.,* at $30,000 an acre instead of $15,000.

In the case of parcels C, D, E, F and G, the board adhered to its original valuations, unaffected by testimony for prosecutor which set figures in all but one case at more than double the board's figures, or by testimony for the railroads which in one case agreed with the board, and in the others stated figures twenty to twenty-five per cent. less. In the case of parcel G, the prosecutor now concurs in the board's valuation, notwithstanding his own witnesses.

In the case of parcels H and J, the board adhered to its valuation, which agreed with that of witnesses for the railroad company.

In the case of parcel K the railroad valuation was slightly above the board's original figure, which remained unchanged.

To recapitulate roughly the results, the board at first fixed its own valuations according to its best judgment and in the light of such information as was available. When appealed to for a review it received evidence offered by the parties, considered it, and as a fact-finding body gave this evidence the weight to which the board considered it entitled. In no case did the board lower its valuations, though the railroads, or some of them, were also appellants. In most, if not all, of the cases it adhered to its own valuations for 1931; in part of them did the same with those of 1930; in other part raised the 1930 valuations to the 1931 figure.

The rule is settled in condemnation cases involving ascertainment of values of land by a jury, that the fact-finding body is not bound to either the high or the low figure in

evidence, but may adopt an intermediate one. *Doughty* v. *Somerville, &c., Railroad Co.,* 22 *N. J. L.* 495, 498, 499; *State Highway Commission* v. *Dover,* 109 *Id.* 303, 307; 160 *Atl. Rep.* 749; *State Highway Commission* v. *Lincoln, &c., Corporation,* 110 *N. J. L.* 190; 164 *Atl. Rep.* 476. Moreover, it was both the right and the duty of the board and its members to use their own knowledge and judgment in the appraisal of values. As we said in *United New Jersey Railroad, &c., Co.* v. *Board,* 103 *N. J. L.* 33 (at *p.* 37): "The valuations of these properties were made by the unanimouse vote of the state board, and in that situation the court has said, valuations made by a unanimous board should not be set aside unless it is entirely clear that the evidence will not fairly support them."

It is several times asserted in the brief that there was "palpable error" on the part of the board. We see no such palpable error; but seem to see on the contrary an honest and conscientious attempt to do full justice as between the parties.

The judgments under review will be affirmed, with costs as against the city of Bayonne only.