JOHNSON, Respondent, vs. CITY OF MILWAUKEE and others, Appellants.

*November 16—December 5, 1911.*

*Statutes: Municipal corporations: Optional amendment of charter:*
   *Adoption by city: Procedure: Officers: Appointment: Civil serv-*
   *ice law: Official bonds: Illegal payment of salary: Injunction:*
   *Taxpayer's action: Curative statute.*

1. An option law, such as ch. 297, Laws of 1907, creating the office of commissioner of public works in all cities of the first class, but providing that it shall not take effect in any city until approved "by a majority vote of the members elect of the common council," is valid.
2. The only prerequisite to the adoption of such act by a city is the approval thereof by the vote stated; and action upon the

resolution of approval is not governed by the procedure prescribed in the city charter for the adoption of resolutions appropriating money or creating a charge against funds of the city, such as reference to a committee, action on its report at a subsequent meeting, consent by the mayor, etc.

3. The superintendent of street construction who, under said ch. 297, Laws of 1907, is to be appointed by the commissioner of public works, is not, within the meaning of the civil service law (ch. 313, Laws of 1895), the "head of any *principal* department" of the city, nor, since he himself is required to give a bond directly to the city for the faithful discharge of his duties, is he an "officer for the faithful discharge of whose duties a superior officer [the commissioner] is required to give a bond." Such superintendent must therefore be appointed in the manner provided by the civil service law.

4. Payment of salary to a city official appointed in violation of the civil service law is an unlawful disbursement of public funds and may be restrained by a court of equity at the suit of a taxpayer. Such an action is not primarily an action to try title to an office, and where there is no rival claimant the question of title is involved in an incidental way only.

5. Ch. 352, Laws of 1911, purports only to cure acts defectively done by the city and not omissions of duty by the commissioner of public works, and it therefore does not validate the appointment by such commissioner of a superintendent of street construction in violation of the civil service law.

APPEAL from an order of the circuit court for Milwaukee county: F. C. ESCHWEILER, Circuit Judge. *Affirmed.*

On April 19, 1910, the common council of the city of *Milwaukee* passed the following resolution:

"Whereas, the city of *Milwaukee* is a city of the first class,

"Resolved, by the common council of the city of *Milwaukee,* that, pursuant to the power and authority conferred by chapter 297 of the Laws of Wisconsin for the year 1907, entitled 'An act providing for the office of commissioner of public works in all cities of the first class, whether organized under special charter or under the general law,' this common council, by majority vote of its members elect, hereby approves, incorporates and adopts as a portion of the city charter of the city of *Milwaukee,* said chapter 297 of the Laws of Wisconsin for the year 1907 (appearing as chapter V of the Milwau-

kee city charter supplement, 1908), relating to the creation
of the office of commissioner of public works in all cities of
the first class and providing that such commissioner shall suc-
ceed within sixty days after his appointment to all the duties,
powers, rights and privileges of the present board of public
works in such cities.    The true intent, purpose and effect of
this resolution is to approve, adopt and put in full force and
effect from and after the date of the passage of this resolu-
tion, said chapter 297 as a part of the charter of said city of
*Milwaukee*."

On April 22, 1910, such resolution was approved by the
mayor, and thereafter the mayor, by communication in writ-
ing to the common council, appointed H. E. Briggs as com-
missioner of public works.    Said Briggs filed his oath of
office and official bond and entered upon his duties.    On
August 15, 1910, by communication in writing, Briggs ad-
vised the common council that he had appointed *C. A. Mullen*
as superintendent of street construction and repairing.    On
August 1, 1910, an ordinance was reported to said common
council fixing the salary of such superintendent at $3,000 a
year, and providing that he give bond in the sum of $10,000.
This ordinance was passed August 15, 1910, and later ap-
proved by the mayor, and the defendant entered upon his
duties as superintendent.

Plaintiff brought this action as a taxpayer to restrain the
defendant city and its treasurer and comptroller from paying
the salary of the defendant *Mullen*.    The complaint alleged
that the appointment was not made in accordance with the
provisions of the civil service laws of the state applicable to
the cities to which the act applies, nor in accordance with the
provisions of the charter of the defendant city, in that said
*Mullen* had not resided in the city for one year next preced-
ing such appointment, had never passed an examination in
accordance with the civil service laws, and had not resided in
the city of *Milwaukee* a sufficient length of time to entitle

him to take such examination. The complaint further alleged that ch. 297, Laws of 1907, had never been legally adopted by the common council of the city of *Milwaukee.*

Defendants demurred to the complaint on the ground that the court had no jurisdiction of the persons of the defendants in this action; that the court had no jurisdiction of the subject of the action; and that the complaint did not state facts sufficient to constitute a cause of action. Such demurrer was overruled, and from the order overruling the demurrer this appeal is taken.

*Daniel W. Hoan,* city attorney, for the appellants, argued that *quo warranto,* not injunction, was the proper remedy, citing secs. 3463, 3466, 3475, Stats. (1898); *Ward v. Sweeney,* 106 Wis. 44, 82 N. W. 169; *State ex rel. Lockschmidt v. Raisler,* 133 Wis. 672, 114 N. W. 118; *Huels v. Hahn,* 75 Wis. 468, 44 N. W. 507; *State ex rel. Mercer v. Sullivan,* 83 Wis. 416, 53 N. W. 677; *State ex rel. Anderton v. Kempf,* 69 Wis. 470, 34 N. W. 226; *Burgess v. Davis,* 138 Ill. 578, 28 N. E. 817; *Nelson v. Superior,* 109 Wis. 618, 85 N. W. 412; McCrary, Elections (4th ed.) §§ 386, 393, 397; and other cases. The appointment did not create any liability or "charge" against the city. There can be no salary unless created and fixed by law. *State ex rel. Milwaukee v. Milwaukee E. R. & L. Co.* 144 Wis. 386, 129 N. W. 623; *Richards v. Enfield,* 13 Gray, 344; *White v. Levant,* 78 Me. 568, 7 Atl. 539; *Wood v. Board of Comm'rs,* 125 Ind. 270, 25 N. E. 188; *State ex rel. Linn Co. v. Adams,* 172 Mo. 1, 72 S. W. 655; *State ex rel. Axen v. Meserve,* 58 Neb. 451, 78 N. W. 721; *Quaw v. Paff,* 98 Wis. 586, 74 N. W. 369. The appointee was either head of a department or a subordinate officer for whom his superior had to give bond; hence he was not within the civil service act. *Butler v. Milwaukee,* 119 Wis. 526, 97 N. W. 185.

*C. H. Hamilton,* for the respondent.

BARNES, J. The resolution adopting ch. 297, Laws of 1907, was passed by the common council of the city of *Milwaukee* on the day upon which it was introduced and at the same meeting, and without reference to any committee.

Sec. 5 of ch. IV of the charter of the city of *Milwaukee* provides that:

"All resolutions appropriating money, or creating any charge against any of the funds of said city or wards, and all accounts and ordinances, shall be referred to appropriate committees and shall only be acted on by the common council at a subsequent meeting not held on the same day, on the report of the committee to which the same were referred."

The trial court held that, inasmuch as ch. 297, Laws of 1907, created a number of salaried offices not before in existence, its adoption created a *"charge"* against the funds of the city and that the charter provisions should have been followed in passing the resolution adopting the law, and, not having been followed, it was never legally adopted, and the offices provided for therein were never lawfully created.

We cannot adopt the view of the law taken by the learned circuit court. Ch. 297, Laws of 1907, is an option law pure and simple. The right of the legislature to pass such a law is settled beyond controversy in this state. The right of the legislature to pass any constitutional law amending the charter of cities of the first class is of course conceded. The legislature might have passed the law without the option feature and it might have provided that the act should not become operative until the electors voted to adopt the same, or until a majority or some major fraction of a majority of the common council so voted, or until the mayor and common council so voted. The act itself we think quite plainly prescribes what should be done. It provides:

"Sec. 20. This act shall take effect and be in force from and after the first day of January, 1908, provided that before this act shall be in effect in any city to which it applies, it

must first have been approved by a majority vote of the members elect of the common council of such city."

The only prerequisite to its adoption was that it should receive the approval of a majority of the common council elect, and it did receive such approval. That this law did not contemplate that the passage of the resolution adopting it should be governed by the procedure prescribed for adopting resolutions under the city charter is quite manifest. Such resolutions must be signed by the mayor, or, if vetoed by him, must be passed over his veto, if at all, by a two-thirds vote of all the members elect. Sec. 7, ch. IV, Milwaukee Charter. Now the law of 1907 does not provide for any consent by the mayor, and it was wholly immaterial whether he gave his consent to the resolution adopted or not. Any other conclusion would lead to this anomalous and incongruous situation: the resolution might have been adopted by the council and vetoed by the mayor and have failed to receive the necessary two-thirds vote to pass it over his veto, although a majority of the members of the council so voted. If respondent's contention is correct the law would not be adopted, because the resolution for adoption could not be passed under the charter provisions, though by its very terms the law was to become operative if approved by a majority vote of the members elect of the common council. We conclude that the law was legally adopted and that the offices therein provided for were legally created. It is therefore unnecessary to consider the effect of ch. 352, Laws of 1911 (sec. 926—175, Stats.), which was designed to cure any defect or informality inherent in the attempted adoption of the act of 1907.

The trial court further held that the appellant *Mullen* was appointed by the commissioner of public works in violation of the civil service law applicable to the city of *Milwaukee*. Appellants contend that the court was in error because the office or place to which *Mullen* was appointed was exempt from the operation of the civil service law, and because a court of

equity had no power to enjoin the payment of the salary of a *de facto* officer. The law of 1907 makes all appointments of the commissioner of public works except his deputy subject to the civil service law applicable to the city of *Milwaukee*. Secs. 4, 8, and 12 of said ch. 297. That law (ch. 313, Laws of 1895) exempts from its provisions "heads of any principal departments of the city" and "officers and clerks for the faithful discharge of whose duties a superior officer is required to give a bond." It is conceded by the appellant that unless the office or position to which *Mullen* was appointed (that of superintendent of street construction and repairing) comes within one of the above exceptions, the appointee should have been chosen from the eligible list of the civil service commissioners. We do not think that the superintendent of street construction and repairing is the head of a principal department of the city. The department of public works would no doubt answer such a description, but the appellant *Mullen* is but one of four subordinate officers who are subject to the direction and control of and who are appointed by and perform their duties under the immediate supervision of their superior officer, the commissioner of public works. They are his assistants and not heads of principal departments. It is true the law says that each shall have charge of his respective department, but it also says that all shall be under the direction and control of the commissioner. Sec. 8, ch. 297, Laws of 1907. The departments over which they preside are integral parts of the principal department over which their superior officer presides. The word *"principal"* in the civil service law quoted must be given effect, and it is obvious here that the department over which Mr. *Mullen* presides is subsidiary to that presided over by the commissioner.

Neither do we think that the commissioner of public works is required to give a bond for the faithful discharge of their duties by the superintendents whom he appoints. The law

specifically provides that these superintendents must themselves take and file an oath of office and furnish a bond "for the faithful discharge of their respective duties, in such amount and with such sureties as the common council of such city may prescribe." Sec. 8. The complaint alleges that *Mullen* did furnish a bond in the sum of $10,000. Had there been no requirement that the superintendents furnish bonds directly to the city, there might be a great deal of force in the claim that the commissioner was liable for their acts on his bond. *Butler v. Milwaukee,* 119 Wis. 526, 97 N. W. 185. But surely the legislature did not intend that these appointees should be bonded twice and that the commissioner should also be liable on his bond for their acts. We conclude that the superintendent of street construction and repairing should be appointed in the manner provided by the civil service law for the selection of public servants coming under its provisions.

However, it is strenuously argued by counsel for appellants that in reality the action is one to try title to office, and that an action at law in the nature of a *quo warranto* is not only the appropriate but is the exclusive remedy to secure the relief here sought. Many cases are cited which hold that equity will not take jurisdiction of a proceeding to try title to office, and, generally speaking, that it will not enjoin the payment of the salary of a *de facto* officer because such a suit would involve the title to the office. The question raised is one that was necessarily passed on in *Butler v. Milwaukee,* 119 Wis. 526, 97 N. W. 185, although it was not discussed. There the court took jurisdiction of just such an action as is here brought, and affirmed the judgment on the merits. Counsel may be justified in believing that the question was not considered because not discussed, and that if such was the case the decision should not carry any great weight as a precedent. Still, we think it carries to a legitimate conclusion a principle that is well established by the decisions of

this court. The payment of salary to *Mullen* by the treas-
urer of the city of *Milwaukee* was a plain, palpable violation
of the civil service statute. Secs. 13, 17, and 18, ch. 313,
Laws of 1895. This is not intended as any criticism on the
treasurer, because he may in good faith have believed that
*Mr. Mullen* was exempt from the operation of the civil service
law. That question has been resolved against him, however;
so that every time the treasurer paid any salary to *Mullen* he
was disbursing public funds in defiance of positive law.
This court has many times held that it would enjoin the un-
lawful expenditure of public funds at the suit of a taxpayer.
*Peck v. School Dist.* 21 Wis. 516; *Nevil v. Clifford,* 55 Wis.
161, 12 N. W. 419; *Beyer v. Crandon,* 98 Wis. 306, 73 N. W.
771; *Webster v. Douglas Co.* 102 Wis. 181, 77 N. W. 885,
78 N. W. 451; *Mulberger v. Beurhaus,* 102 Wis. 1, 78 N. W.
402; *Land, L. & L. Co. v. McIntyre,* 100 Wis. 245, 75 N. W.
964; *Kircher v. Pederson,* 117 Wis. 68, 73, 93 N. W. 813;
*St. Croix Co. v. Webster,* 111 Wis. 270, 273, 87 N. W. 302;
*Siegel v. Liberty,* 111 Wis. 470, 473, 87 N. W. 487; *Linden
L. Co. v. Milwaukee E. R. & L. Co.* 107 Wis. 493, 503, 83 N.
W. 851; *Allen v. Milwaukee,* 128 Wis. 678, 687, 106 N. W.
1099; *Balch v. Beach,* 119 Wis. 77, 86, 95 N. W. 132. Many
other cases of like tenor are cited in the foregoing decisions.
In this connection it might be said that there is no rival
claimant for the office of street superintendent. The ques-
tion of title to office is involved in an incidental way only.
The grievance that plaintiff urges is that public moneys are
being expended contrary to law. In proving his case the
plaintiff will be obliged to show that *Mullen* was never legally
appointed to the office which he holds, but this does not neces-
sarily make the action one to try title to office. Primarily it
is not such an action. The rule here announced will, we con-
ceive, be the one best calculated to secure efficient adminis-
tration of our civil service laws. The curative act (ch. 352,
Laws of 1911) does not validate or attempt to validate the

appointment of *Mullen.* It purports only to cure acts defectively done by the city, and not omissions of duty by the commissioner of public works, and it is evident that it was not the legislative purpose to modify or disregard the civil service law applicable to *Milwaukee,* and in effect to make an appointment to office, assuming that it had the right to appoint a street superintendent for the city of *Milwaukee,* a point which we do not decide. The conclusion reached obviates the necessity of deciding whether *Mullen* was ineligible because not a qualified elector of the state at the time of his appointment and attempted qualification. It follows that the complaint states a cause of action and that the order appealed from should be affirmed.

*By the Court.*—Order affirmed.