STATE EX REL. DIETRICH, Respondent, v. MILLER and others, CIVIL SERVICE COMMISSION OF CITY OF WEST ALLIS, Appellants.

*October 1—October 27, 1964.*

For the appellants there was a brief by *William T. Schmid*, city attorney, and *Frederick A. Miller*, assistant city attorney, and oral argument by *Mr. Miller*.

For the respondent there was a brief and oral argument by *Clyde E. Sheets* of Milwaukee.

WILKIE, J.   The single issue that is determinative of this appeal is whether the trial court erred in setting aside the Civil Service Commission's findings.

The Civil Service Commission found:

"2. That since 1955 the assessor of the city of West Allis has made changes in the duties and organization of that office, including (1) the completion of new land maps for the entire city, (2) a key-numbering system for all parcels of real estate, (3) the correlation of all assessment data with the tax roll utilizing IBM equipment, and (4) the completion of all special projects and studies.

"3. That these aforesaid measures resulted in material changes in the duties and organization of the office of the city assessor, so that the total work load of the office could be efficiently administered without the services of a junior assistant assessor."

The commission concluded (1) that the layoff was made because of these "material changes in the duties and organization of the office," (2) that "the city assessor acted in good faith in effecting the layoff," and (3) that Dietrich's seniority rights had not been violated.

The trial court reviewed the record and concluded (1) that the commission's ruling was "arbitrary and unreasonable," (2) that the credible evidence showed that Dietrich

was not discharged for the purpose alleged in the findings, (3) that the discharge was a "sham and a subterfuge intended to evade the tenure of office and civil service laws," and (4) that the evidence did not support the commission's findings that Dietrich's seniority rights had not been violated and that the assessor acted in good faith.

Dietrich's rights and the proper administrative procedure for reviewing the layoff action are controlled by the provisions of the 1938 West Allis Code, because the layoff action was taken on September 12th before the new West Allis Code took effect. In any event, both ordinances contained an identical provision permitting a layoff on the grounds found by the commission. Specifically, sec. 14.06 (9) of the 1938 Code provided:

"(9) Whenever a reduction of employees is made necessary because of a shortage of funds or a material change in duties or organization, employees shall be laid off in inverse order to earned seniority in the class of position in the department affected, and thereafter on the basis of the inverse order of total seniority in excess of an employee with greater class position seniority, he shall be entitled to a position in the next lower class of position in which he last previously served. . . ."

In reviewing the action of an administrative board by certiorari, the court will only determine:

"(1) Whether the board kept within its jurisdiction, (2) whether it acted according to law, (3) whether its action was arbitrary, oppressive, or unreasonable and represented its will and not its judgment, and (4) whether the evidence was such that it might reasonably make the order or determination in question." [1]

The evidence taken by the commission shows that there were substantial changes made in the procedures and duties

---

[1] *State ex rel. Wasilewski v. Board of School Directors* (1961), 14 Wis. (2d) 243, 255, 111 N. W. (2d) 198.

in the assessor's office: Land maps had been prepared, a key-numbering system established, an IBM system installed to co-ordinate the maps and key numbers, and all special projects had been completed. The evidence also showed that the city assessor was no longer participating in national assessing associations, which had kept him away from the office, and he would now be able to devote full time to his job in West Allis. The trial court found that the ruling was arbitrary and unreasonable and that it was not according to law because of a lack of "fair play." [2]

Respondent claims that the trial court's conclusion that the discharge was unreasonable and not for the reasons given was supported by evidence showing that an assistant assessor was hired in May of 1962. Dietrich was given a chance to fill this position (a higher-grade position), but finished last in the examination given to job applicants. A city can hardly be condemned for attempting to staff qualified people. The hiring of one man almost contemporaneously with the discharge of another does not indicate a sham when the latter was given the opportunity to obtain the new and different job.

"Fair play" was supposedly lacking because Dietrich had ten years' tenure and was too old to get a job elsewhere. It is true that Dietrich had been employed by the city for ten years and it may well be true that at forty-six obtaining other employment would be difficult. But these factors are hardly enough to deem the commission's action repugnant to ideals of "fair play." There is absolutely no affirmative evidence indicating any lack of fair play.

Respondent also contends that as the position of junior assistant assessor was established by the city ordinance, only the city council may eliminate it. But the job was not

---

[2] Relying on *State ex rel. Ball v. McPhee* (1959), 6 Wis. (2d) 190, 94 N. W. (2d) 711, which held that the phrase "according to law" meant, among other things, fair play.

abolished; the commission merely deemed it economically unsound to retain the employee filling the position. Someone could be hired for the position at a later date if the workload so demanded.

There is ample evidence to sustain Dietrich's layoff for the reasons given by the commission. A finding that Dietrich could not be laid off under the ordinance, even when the work load had been reduced by a reorganization of the assessing office and by more efficient procedures, and when it became plain to the assessor that it was no longer economically feasible to retain him, is tantamount to saying that municipalities cannot try to economize by eliminating civil-service employees whose work load has vanished, and this could have the effect of giving every employee lifetime tenure in his particular job. Such a state of affairs would be preposterous.

The trial court erred in setting aside the commission's findings.

*By the Court.*—Judgment reversed.