CASTELAZ, Plaintiff-Appellant, v. CITY OF MILWAUKEE, and others, Defendants-Respondents.

Supreme Court

*No. 77-346. Argued December 3, 1979.—Decided March 4, 1980.* (Also reported in 289 N.W.2d 259.)

For the appellant there were briefs by *John Sundquist* and *Walther & Halling* of Milwaukee, and oral argument by *Mr. Sundquist*.

For the respondents the cause was argued by *John F. Kitzke,* assistant city attorney, with whom on the brief was *James B. Brennan,* city attorney.

DAY, J. The plaintiff, Donald R. Castelaz, appeals from a summary judgment entered for the defendants, the City of Milwaukee, the Board of City Service Commissioners (hereinafter the Board) and ten city officials sued both in their official and individual capacities. Although numerous issues have been raised by the parties, we conclude that a single question is dispositive on this appeal. That is, whether Mr. Castelaz should have exhausted his administrative remedies prior to instituting this suit. We conclude that he should have, and accordingly affirm.

This action was commenced on June 17, 1976, approximately two years after Mr. Castelaz's employment with the City of Milwaukee was terminated. The complaint alleged that the defendants violated civil service statutes and rules in Mr. Castelaz's dismissal and in their subsequent failure to reinstate him. He also alleged that his state and federal civil rights had been violated and that the defendants engaged in a conspiracy to wilfully and maliciously injure him in his reputation and profession.

Before answer, on August 18, 1976, the defendants filed a motion to dismiss under sec. 802.06 (2) (f), Stats.

1975,[1] for failure to state a claim upon which relief could be granted. In the alternative, the motion requested that summary judgment be granted under sec. 802.08, Stats. 1975. A brief with attached documents accompanied the motion. The plaintiff filed a brief opposing the motion and attached opposing affidavits on October 21, 1976.

On January 17, 1977, an "amended" motion to dismiss was filed by the defendants alleging procedural defects in the plaintiff's complaint as well as the plaintiff's failure to exhaust his administrative remedies.

The memorandum decision of the trial court concluded that considering all of the materials presented by the parties, there was no genuine issue of fact or law to be tried. The trial court concluded that it could not look beyond the reasons given by the agency for its actions. It found that the termination of the plaintiff was conducted according to the requirements of the civil service statutes and rules. Likewise, it found that there were no grounds for granting a trial on the civil rights or conspiracy claims.

Mr. Castelaz alleged that on September 19, 1972, he was appointed to the position of Project Coordinator for the Milwaukee Model Cities Agency.[2] He was required

[1] Sec. 802.06(2), Stats. 1975, provides that if on a motion for failure to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment.

[2] The Milwaukee Model Cities Agency was developed under the Demonstration Cities and Metropolitan Development Program, 42 U.S.C. §3301, et seq. (1970). The Department of Housing and Urban Development was authorized to make grants and provide technical assistance to enable city demonstration agencies to plan and develop comprehensive city demonstration programs. Congress made the determination that "the quality of urban life is the most critical domestic problem facing the United States." Id. at §3301. Congress therefore allocated five billion dollars to be spent in neighborhoods in 150 "Model Cities" in the early 1970's. Each model city was to have a planning year followed by five action years where funding would be used for various programs in

to take the Civil Service Merit exam for that position. He placed first on the examination, and on December 20, 1972, he received a "regular" City Civil Service appointment to that position. These facts are not disputed by the defendants.

He further alleged that he was terminated or laid off, without a hearing, in violation of the civil service rules, and that his termination was obtained by means of an unlawful layoff plan. That plan was alleged to be in violation of the seniority provisions of the civil service rules. The layoff or termination was made ". . . pursuant to a plan, because of plaintiff's frequent and public opposition to unsound politically-motivated City practices and procedures and plaintiff's consistent and public support for the then Model Cities Agency director, John Givens."

Notice of the layoff or termination was given to Mr. Castelaz on May 28, 1974 and was to become effective on June 28, 1974. Mr. Castelaz alleged that he presented written appeals on May 30, 1974, June 3, 1974 and June 10, 1974, which were denied by the City Personnel Director without referring the matter to the entire Board. He alleged that he appealed to the mayor and the chief administrator to the office of the mayor, as well. He has not alleged any constitutional deficiency in the administrative procedures utilized in the layoff or discharge of civil service employees.

Mr. Castelaz alleged that his transfer and reinstatement rights under Civil Service Rule X and secs. 63.25, 63.26, 63.37 and 63.39, Stats., were deliberately subverted and that the individually named defendants concealed positions to which he had reinstatement rights. Accord-

housing, education, employment and health in the inner city. *See, generally*, McGee, Jr., *Illusion And Contradiction In The Quest For A Desegregated Metropolis*, 1976 U. ILL. L. F. 948; "Validity, Construction, and Application of 'Model Cities' Provisions of Demonstration Cities and Metropolitan Development Act of 1966," Annot. 10 A.L.R. Fed. 802 (1972).

ing to the complaint he was not placed on a transfer or reinstatement list until May 6, 1975 nearly a year after his layoff. He alleged that there were Project Coordinator positions open but that the individual defendants did not inform him of the openings or consider him for the positions. The complaint further asserted that a civil service position of Project Coordinator was deliberately left unfilled and that there was a secret attempt to delete this position by the individual defendants to preclude the plaintiff from asserting rights to the position.

His final three claims alleged that the foregoing actions on the part of the defendants operated to deny him his constitutional rights, and involved a conspiracy to maliciously and wilfully injure him in his reputation and profession under sec. 134.01, Stats. 1975, and the common law. He based his federal civil rights claim on 42 USC §1983. His state civil rights claim was based on the Wisconsin Constitution and secs. 111.31–111.36, Stats. 1975, of the Fair Employment Act.

The relief sought for violations of the civil service statutes and rules included reinstatement, back pay, restoration of seniority rights, employment benefits, and attorney fees. For the denial of civil rights and conspiracy, compensatory and punitive damages and attorney's fees were requested against the defendants in their individual capacities.

A few basic facts are not disputed by the parties. The Milwaukee Model Cities Agency was by definition a temporary project program. Its continued existence was dependent upon continued federal funding. At the time Mr. Castelaz was terminated as an employee in the Agency, the Agency was undergoing a reduction in funding. Approximately one year after Mr. Castelaz's termination, the Agency was folded into the Milwaukee Department of City Development.

Mr. Castelaz received a letter terminating his employment dated May 28, 1974, signed by John Givens the

Agency's director. Until his termination he had received a very satisfactory performance evaluation by his superiors, and he was recommended highly by the then Agency director, John Givens.

The defendants argue that Mr. Castelaz held an exempt position under sec. 63.27, Stats. 1971,[3] and that he was therefore not guaranteed tenure in his employment. We need not determine whether the position that Mr. Castelaz held was exempt under this section because it is clear from the record, and the defendants concede, that Mr. Castelaz was a regular city civil service employee when he was laid off or terminated.

Absent civil service regulation and laws, a municipal employee has no tenure in his public service. *Adamczyk v. Town Of Caledonia*, 52 Wis.2d 270, 190 N.W.2d 137 (1971). *Compare, Richards v. Board Of Education*, 58 Wis.2d 444, 206 N.W.2d 597 (1973).

The defendants argue that Mr. Castelaz, as a regular city civil service employee, was entitled to layoff assistance and reinstatement rights. They contend however, that the job rights of Mr. Castelaz extended only for the duration of the federal funding of the Model Cities Agen-

---

[3] "63.27. **Rules not applicable to certain officers.** Officers who are elected by the people, or who by the statutes are required to be elected by the city council, inspectors and clerks of election, one deputy in each department whose office was created and exists by reason of statute, the superintendent and teachers of schools, the members and secretary-business manager of the board of school directors, staff of the board of school directors if the board so decides pursuant to s. 119.18(10) (c), heads of principal departments of the city, all members of the law, fire and police departments, one private secretary of the mayor and any other officers, clerks or employes in the service of the city whose positions, in the judgment of the city service commissioners, cannot for the time being be subjected, with advantage to the public service, to the general rules prepared under this chapter shall not be affected as to their election, selection or appointment by such rules made by said commissioners."

cy; that he was informed of this fact; and that he had no absolute right to continued employment with the city.

The defendants' contention in this regard is correct. Employment under the civil service laws is not an absolute job guarantee. If there are no funds available, or if the position is abolished in good faith or otherwise becomes unnecessary, there is nothing to prevent the termination of civil service employees. *State ex rel. Dietrich v. Miller*, 25 Wis.2d 371, 130 N.W.2d 768 (1964).

In *State ex rel. Thein v. Milwaukee*, 229 Wis. 12, 281 N.W. 653, (1938), a civil service employee brought a mandamus action against the city to compel reinstatement of seniority rights and damages for the denial of those rights. The court examined the power of municipalities to reclassify or abolish civil service positions. The Court said:

"Civil-service laws are not intended to prevent good-faith reorganization with a view to securing greater efficiency. The cases referred to by the appellant are authority for the rule that civil-service laws are not to be evaded by a sham abolition of an old position for the purpose of ousting an incumbent, but on the other hand the civil-service laws are not intended to interfere with a municipality combining the duties of one civil-service position with those of another, even though this results in some persons being dropped from the service. *State ex rel. Voris v. Seattle*, 74 Wash. 199, 133 Pac. 11." 229 Wis. at 18.

It is argued that the placement and removal of persons holding exempt positions is entirely discretionary with the Agency and is not subject to review by the Board, even when the exempt position is filled by a civil service employee.

We do not agree. When an exempt position is filled by a civil service employee he is entitled to the protection

of the substantive as well as the procedural rights conferred by those rules. Although the statute refers to exempt and classified positions it must be kept in mind that the civil service laws were designed to protect employees and not positions. The employee accorded civil service status, and the public, have an interest in assuring that a civil service employee is not wrongfully deprived of his or her livelihood. *Karow v. Milwaukee County Civil Service Comm.*, 82 Wis.2d 565, 573, 263 N.W.2d 214 (1978) ; *Watkins v. Milwaukee County Civil Service Comm.*, 88 Wis.2d 411, 420, 276 N.W.2d 775 (1979).

Once an employee achieves full civil service employment status, he is entitled to the protection of the civil service laws. The purpose of providing exempt positions in city employment is to allow more flexibility than the civil service system provides in filling those positions. But once the decision is made to place a civil service employee in an otherwise exempt position, a determination must have been made by the hiring authority that the position is one which is compatible with the civil service laws. When a civil service employee occupies an exempt position he cannot be laid off, removed, discharged or reduced for reasons which would be in violation of the statute and rules. Likewise, he is entitled to the procedural protection of the rules.[4]

---

[4] Even if we were to agree with the defendants' assertion that Mr. Castelaz's position could be abolished at will, and we express no view in this regard, there are constitutional limits to this argument. Public employees in certain instances may not be terminated for reasons connected to the exercise of the employee's constitutional rights. In *Elrod v. Burns*, 427 U.S. 347, 96 S. Ct. 2673, 49 L. Ed.2d 547 (1976), the United States Supreme Court held that non-civil service employees of the Cook County Sheriff's Department could not be discharged simply because they were not associated with the Democratic Party. The termination of a non-confidential, non-policy making employee of state or municipal government, which is motivated solely by political or other free

The purpose behind civil service protection is to secure qualified employees for public service free from political influence. Sec. 63.43, Stats. 1973, explicitly provides that no employee holding an office or position classified and graded under the civil service act "shall be removed, discharged or reduced, except for just cause which shall not be political or religious." One of the principal functions of the Board is to ensure that sec. 63.43 is effectively implemented. To achieve this goal, an administrative procedure for processing city civil service employee grievances has been developed.

The Board derives its power from statute. See Secs. 63.18 and 63.19, Stats. 1973. The Board has the power to subpoena witnesses and documents, and investigate in accordance with the statutes and rules. Its rulemaking power is derived from sec. 63.24, Stats. 1973.[5] That section provides that the commissioners shall make rules adopted to carry out the purposes of the act and which are not inconsistent with the purposes of the act.

---

speech considerations, violates the employee's First and Fourteenth Amendment rights and is actionable under the federal civil rights laws. 42 U.S.C., secs. 1983, 1985, 1986, 1988.

[5] Sec. 63.24, Stats. 1973, provides:

"63.24. **Commission to make rules.** The said commissioners shall make such rules adapted to carry out the purposes of the act and not inconsistent with its provisions, as in their judgment shall be adapted to secure the best service for the city in each department affected by said act, and as shall tend to promote expedition and speed the elimination of all unnecessary formalities in making appointments. All rules so made shall be subject to the approval of the mayor of the city, and they may with like approval be from time to time altered or rescinded by said commissioners; however, if the mayor takes no action on a rule or an amendment to the rules, submitted to him, within a period of 10 days from the date of its submission, then the rule or amendment to the rules shall become effective as though approved by the mayor. The said commissioners shall supervise the administration of rules so established."

The statutes also provide that the Board shall have the power to investigate and hold hearings when an employee holding a position classified and graded under the act is removed, discharged or reduced. Sec. 63.43, Stats. 1973.[6] We believe this power includes the duty to

[6] Sec. 63.43, Stats. 1973, provides:

"63.43. **Removals for just cause only; reasons to be furnished in writing; hearings; decisions.** (1) No person or employe holding an office or position classified and graded under the provisions of this act shall be removed, discharged or reduced, except for just cause which shall not be political or religious. A person removed, discharged or reduced shall be furnished, by the officer making the removal, with the reasons in writing, for such action when demanded by said removed, discharged or reduced person. When reasons are given by the officer making the removal, a copy of the same shall be immediately forwarded to the commission. Within 3 days after such removal, discharge or reduction an appeal may be made to the commission in writing, by the employe so removed, discharged or reduced. The commission, on receiving such notice of appeal, shall set a date for a hearing on or investigation of the reasons for the removal, discharge or reduction, which date shall not be more than 30 days after the date of removal, discharge or reduction. Notice of the time and place of such hearing or investigation shall be served upon the employe appealing, in the same manner that a summons is served in this state. Notice shall also be given the officer making the removal. The city service commission, or board or committee of such board or boards appointed by said commission, shall conduct the hearing or investigation. The employe appealing shall have full opportunity to be heard and may, at the discretion of the commission, be represented by counsel. When the employe is represented by counsel, the officer making the removal, discharge or reduction may be represented by the city attorney. If, however, such officer chooses to be represented by counsel, other than the city attorney, he may so do, but any expense so incurred shall not be paid by the city. In the course of a hearing or investigation as herein provided for, any member of the commission and of any board or committee appointed by it, shall have the power to administer oaths and shall have power to secure by its subpoena both the attendance and testimony of witnesses and the production of books and papers

provide rules regarding the layoff procedure for civil service employees.

Pursuant to its rulemaking power, the Board has established a procedure for determining the order of seniority for layoffs; the procedure to be followed when deviating from this order; and most importantly for the purposes of this case, the procedure for the aggrieved employee to follow when he feels that his rights under the civil service rules and statutes have been violated.

City Service Rule X,[7] sec. 1 provides for the ordinary procedure for implementing layoffs. Generally persons last certified and appointed shall be laid off first, provided that efficiency is equal. Temporary and provisional employees shall be laid off prior to regular employees. Seniority of certification controls in layoffs where an employee is either transferred from one bureau to another or is reinstated in the service, provided that efficiency is equal.

The Board may adopt any reduction in force or layoff plan which in its judgment is for the general good of the

relevant to such hearing or investigation. All evidence may, on the order of the board, be taken by a competent reporter.

"(2) The decision and findings of the commission, or of the investigating board or committee, when approved by the commission, shall be final and shall be filed, in writing, with the secretary of the board and shall be forthwith certified to and enforced by the head of the department or appointing officer. . . ."

[7] "Rule X.  **Layoff, leave of absence, resignation and reinstatement.**  Section 1.  LAYOFF.  Persons who were last certified and appointed shall be laid off first; provided that efficiency is equal, and provided further that temporary and provisional employees shall be laid off prior to regular employees. The intention of this provision is that, while in laying off employees the rules of seniority shall govern; nevertheless it is the intention of the Commission to permit those employees whom it finds less efficient to be laid off first, regardless of seniority. . . . Notwithstanding the above, in the event of reduction in force or layoff, the Commission may adopt, after hearing, any reduction-in-force or layoff plan which in its judgment is for the general good of the service."

service, without regard to the general rules listed above. But, it may do so only after a hearing. The scope of that hearing is not defined by the Rule.

Seniority under Rule XII[8] is calculated from the time of assumption of duties as a regular employee in the position in question. Relative seniority shall be deter-

---

[8] "Rule XII. **Seniority and efficiency.** Section 1. SENIORITY RIGHTS. (a) In making layoffs and reinstatements, and for the purpose of determining the relative rights and privileges of employees, seniority rights shall be respected but only provided efficiency is equal. In all cases the interpretation of seniority rights is subject to the provisions of these rules regarding certifications, layoffs, reinstatements and all other subjects. In any case involving like offices, reinstatements, or relative rights and privileges of employees, in which a department head or other supervisory officer proposes to lay off, reinstate, or determine relative rights and privileges of employees on the basis of relative efficiency rather than on the basis of seniority, such department head or supervisory officer shall be required to notify the City Service Commission of such proposed action and to show that efficiency, rather than seniority, is the proper basis for such proposed action. . . .

"Section 2. CALCULATION OF SENIORITY. Seniority shall be calculated from the time of assumption of duties as a regular employee in the position in question (or in other position of equal responsibility and duties as recognized by the Commission) without counting provisional or emergency service, and in the particular department, bureau, office or place of employment as recognized by the Commission. When several persons are appointed from the same certification, their relative seniority shall be established by their examination ratings and not by the precise day each began work. The Commission may, in any case where it thinks it proper to do so, make deductions from credited time because of absence from the service.

"Section 3. DETERMINATION OF RELATIVE SENIORITY. Relative seniority shall be determined within the respective departments, bureaus or subdivisions thereof, offices or places of employment as designated by the Commission, and by titles of positions, the seniority rights of any employee as compared with other employees to extend no further than the department, bureau of subdivision thereof, office or place of employment of the said employee and in comparison with other employees holding the same title; . . ."

mined within the respective departments or agencies and by the title of the position held. The seniority rights of one employee relative to another are to extend no further than the length of regular service within that department.

When a regularly appointed employee is ordered to be removed, discharged, reduced or is suspended for certain time periods he may appeal that action to the Board by written notice within three days of the order. The Board will then conduct a hearing or investigation provided by the rule. The defendants contend that the plaintiff should have pursued this remedy under Rule XIII.[9]

---

[9] "Rule XIII. **Discharge, appeal, hearing.** Section 1. *TERMINATION DURING PROBATION. The appointing officer may, subject to the approval of the Commission, terminate an employee at any time during his probation period but a full statement of his reasons for such termination must be filed with the Commission within three days of the said termination.

"Section 2. **APPEAL PROCEDURE. An employee regularly appointed (having passed his probationary period) in appealing within three days from an order of removal, discharge or reduction, or from a second suspension within six months of a former one, or from any suspension exceeding fifteen working days in length, may use the following or similar form:

"To the Honorable Board of City Service Commissioners: Please take notice that I appeal from the order or decision of . . . . . . . . . .
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . discharging (removing, reduc-
    (State name and official title)
ing or suspending me from service; which said order of discharge (removal, reduction or suspension) which was made on the. . . . . .
day of . . . . . .19. . Dated this. . . . . . . .day of. . . . . .19. . . . Signed
. . . . . . . . . . . . .The three days within which appeal may be made shall start at the time the above indicated notice of action is served by the department upon the employee. The three days within which appeal may be made shall start at the time notice of discharge is served by the department upon the employee.

"Section 3. HEARING OR INVESTIGATION. The Commission on receiving a notice of appeal shall set a date for the hearing or investigation; provided that the date shall be so set that notice of it may be served on the employee and the officer at least five days

However, it is Rule XII, sec. (1) (b) [10] that provides the appropriate procedure for contesting a "layoff" ra-

prior to the hearing unless such limitation be waived by both employee and officer. Upon receipt of notice of appeal the Commission may require of the department head a statement of the reasons for removal, discharge or reduction. Either party may request and be granted an adjournment of such hearing or investigation not to exceed a period of fifteen days or the Commission itself may order such adjournment. If the Commission orders an investigation as a part of a hearing or in lieu thereof, it may investigate as a board or appoint a committee of its own members or of other persons to make such investigation and report back to it.

"Within five days after conclusion of the hearing or investigation, the Commission shall, by a majority vote of its members, determine whether by a preponderance of the evidence the charges are sustained. If the Commission shall determine that the charges are sustained they shall at once determine whether the good of the service requires that the accused shall be permanently discharged or shall be suspended without pay for a period to be determined by the Commission, or reduced from a higher to a lower position. If the charges shall not be sustained the accused shall be immediately reinstated in his former position, without prejudice, and the accused shall not be deprived of any salary for the period of time he may be suspended preceding an investigation or trial."

[10] Rule XII (1) (b) provides:

". . . (b) Any employee who feels aggrieved by reason of being laid off in violation of any alleged or valid seniority rights, or by reason of not being reinstated when other employees of similar title, salary and duties in the same office, bureau of place of employment have been reinstated or are serving, and have lower seniority than the aggrieved employee, shall, within thirty days after being laid off or after failing to obtain reinstatement at the time claimed to be proper, file or cause to be filed with the Commission a demand in writing for reinstatement or other relief, stating the facts upon which his demand is based, and the Commission shall upon at least three days notice in writing to the employee (which notice may be served by ordinary mail or in any other manner) conduct an investigation and hearing and take action thereon disposing of the said demand; and in case of failure of the employee to file such demand within the time above fixed therefore the layoff shall be deemed to be proper. This provision

ther than Rule XIII. Rule XII, sec. (1)(b) requires the employee to file a written demand for reinstatement or other relief within thirty days after being laid off or after failing to obtain reinstatement at a proper time. The Board is then required to give written notice to the aggrieved employee of the Board's investigation and hearing.

The allegations of the complaint show that Mr. Castelaz's "appeals" were taken prior to the Rule X hearing. The hearing held under Rule X in this case was not of the same nature or scope as the hearing provided in Rules XII or XIII. A Rule X hearing is preliminary to a Rule XII hearing, and the inquiry by its nature is more limited, being restricted to questions of necessity of the layoff and whether it was for the good of the service.

It is alleged in the complaint that written appeals to the Board were filed on May 30, 1974, June 3, 1974 and June 10, 1974, but were ignored. Examination of the documents filed by Mr. Castelaz reveal that the May 30th "appeal" was an inquiry to the Board by Mr. Castelaz as to why Mr. Belcher was not laid off. The June 10th "appeal" was in inquiry to the Board as to the reason for laying Mr. Castelaz off rather than Mr. Thomas. There is no indication as to the nature of the June 3rd appeal. The appeals to the mayor and his chief administrator would have no effect because those men were not alleged to be on the Board at the time of Mr. Castelaz's termination. There is no allegation in the complaint that a formal written demand for relief was filed pursuant to Rule XII. No demand for an investigation or

shall not be interpreted to cut off all right to relief in case the employee does not act within thirty days of the time his right of action arises, and in case of delay beyond the thirty day period he may still have action declaring his rights for the future, but shall not, under any circumstances, be entitled to salary for time when services were not rendered prior to thirty days previous to the filing of said demand in writing."

hearing was made after the Board voted to approve the Model Cities Agency layoff plan in late June, 1974.

If a timely written demand had been filed, the Board would have been required to conduct an investigation and hearing as to the reason for the layoff. Likewise, when Mr. Castelaz felt that he was denied his reinstatement rights he should have followed the same procedure. Under the rule, the layoff or failure to reinstate is deemed proper if a demand is not filed within thirty days after the layoff or the right to reinstatement accrues. However, the thirty day period is not absolute and future rights may be determined. If Mr. Castelaz had filed a timely written demand for a hearing, the Board would have been required to conduct an investigation and hold a hearing. Mr. Castelaz could then have petitioned the circuit court for a writ of certiorari under sec. 252.04, Stats. 1975,[11] to review an adverse ruling. If the Board failed to hold the hearing, he could have petitioned for a writ of mandamus to compel compliance with the rules. *Watkins v. Milwaukee County Civil Service Comm.*, 88 Wis.2d 411, 276 N.W.2d 775 (1979). Either way, a speedy, effective and complete remedy was at his disposal.

We also note that Mr. Castelaz has not alleged that the Board was biased against him or that the Board members were not capable of rendering an impartial decision. There has been no allegation that the pursuit of his administrative remedy would have been futile.

We conclude that Mr. Castelaz's failure to pursue his administrative remedies by means of a Rule XII hearing is fatal to this action.[12]

---

[11] Now sec. 753.04, Stats. 1977.

[12] The plaintiff objects to the consideration of the exhaustion defense because it is asserted that a party cannot amend a summary judgment motion. Sec. 802.08, Stats. provides that the court

Early cases of this court have recognized that the procedure for redressing grievances under the civil service laws are exclusive and that Wisconsin courts will not by mandamus determine whether an employee is entitled to an office where the plaintiff has not pursued his remedy under the civil service laws. Once an administrative procedure has been established, the complaining party cannot ignore that procedure, wait nearly two years as Mr. Castelaz has done, and then challenge the correctness of the employee's termination through independent judicial proceedings. *State ex rel. Hayden v. Arnold,* 151 Wis. 19, 36–37, 138 N.W. 78 (1912) ; *State ex rel. Bannen v. Arnold,* 151 Wis. 38, 138 N.W. 85 (1912).[13]

In *Watkins v. Milwaukee County Civil Service Comm.,* 88 Wis.2d 411, 276 N.W.2d 775 (1979), an employee sought a writ of mandamus to compel reinstatement due to his allegedly coerced resignation. This court without reaching the merits, held that when an allegation of a coerced resignation is made by a civil service employee and a timely petition for a hearing is filed, the County Civil Service Commission is required to hold a hearing on the merits. The court *sub silentio* rejected the demand for reinstatement and recognized that the Civil Service Commission had the primary responsibility for determining the legality of employee terminations within its jurisdiction.

---

may grant summary judgment even if a party has not requested it. The plaintiff correctly notes in his reply brief that the "amended" motion merely added "new legal grounds" for granting the motion. Since the defendants were asserting no new facts and no prejudice has been shown, and strictly legal defenses were asserted, we may properly consider them. *Cf.,* sec. 802.06(8), Stats.

[13] The following cases are cited by the plaintiff for the proposition that this Court has entertained equitable suits seeking redress for violations of civil service laws. Most of these cases were taxpayer suits to enjoin unlawful public expenditures. The

The doctrine of exhaustion of administrative remedies does not apply where there are no administrative proceedings under way. *Sawejka v. Morgan,* 56 Wis.2d 70, 79, 201 N.W.2d 528 (1972); *State v. Dairyland Power Cooperative,* 52 Wis.2d 45, 54, 187 N.W.2d 878 (1971); *See, Beal v. First Fed. Sav. & Loan Asso. Of Madison,* 90 Wis.2d 171, 197, 279 N.W.2d 693 (1979). ". . . [E]xhaustion relates to judicial review of incomplete administrative proceedings. . . ." *Beal, supra,* 90 Wis.2d at 197.

Clearly the administrative proceedings before the Board were incomplete in this case.[14] The Board had held the Rule X hearing. The next step for Mr. Castelaz was to proceed with the demand for a Rule XII(1)(b) hearing. In a continuing line of cases this Court had held that where there is a specific procedure for review of administrative action and for court review of the administrative decision, the remedy before the administrative agency must be pursued prior to resort to judicial remedies. *See, Nodell Inv. Corp. v. Glendale,* 78 Wis.2d 416, 422–424, 254 N.W.2d 310 (1977).

"The rule of exhaustion of administrative remedies is a doctrine of judicial restraint which the legislature and the courts have evolved in drawing the boundary line between administrative and judicial spheres of activity. The premise of the exhaustion rule is that the admini-

remainder are dissimilar from the present case: *Butler v. Milwaukee,* 119 Wis. 526, 97 N.W. 185 (1903); *Johnson v. Milwaukee,* 147 Wis. 476, 133 N.W. 627 (1911); *Dandoy v. Milwaukee County,* 214 Wis. 586, 254 N.W. 98 (1934); *Unger v. Gregory,* 249 Wis. 161, 23 N.W.2d 280 (1946); *Schoonover v. Viroqua,* 244 Wis. 615, 12 N.W. 2d 912 (1944); and *Cayo v. Milwaukee,* 41 Wis.2d 643, 165 N.W.2d 198 (1969).

[14] Because the administrative procedure had begun, the doctrine of primary jurisdiction does not apply. *Nodell Inv. Corp. v. Glendale,* 78 Wis.2d at 427 (fn. 13).

strative remedy (1) is available to the party on his initiative, (2) relatively rapidly, and (3) will protect the party's claim of right." 78 Wis.2d at 424.

We therefore conclude that Mr. Castelaz's claims of unlawful layoff, unlawful discharge and unlawful failure to reinstate were properly dismissed by the circuit court. Neither do we perceive any error in the dismissal of the conspiracy count, and the claimed violations of the Wisconsin Constitution, secs. 111.31–111.36, Stats., and "Wisconsin Common Law." Although we do not determine whether a private right of action exists based on these claims, we conclude that the factual basis for establishing these claims is so closely intertwined with his claimed civil service rights that they should be dismissed as well.

The final question is whether Mr. Castelaz should be required to pursue his administrative remedies prior to filing a 42 U.S.C., §1983[15] action based on alleged denials of his civil rights.

Mr. Castelaz contends that despite any requirement of exhaustion as to his other claims, he was not required to pursue his administrative remedy prior to resorting to state courts pursuant to 42 U.S.C., §1983.[16]

---

[15] 42 U.S.C. §1983 provides:

"§1983. Civil action for deprivation of rights. Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." R.S. §1979.

[16] This Court has recently recognized that state courts have subject matter jurisdiction over §1983 claims. *Terry v. Kolski*, 78 Wis. 2d 475, 254 N.W.2d 704 (1977). The United States Supreme Court has recently held in *Monell v. New York City Dept. Of Social Services*, 436 U.S. 658 (1978) that local governments are persons with-

In federal courts the general principal has evolved that when federal claims are premised on 42 U.S.C., §1983, state remedies need not be exhausted prior to bringing suit in a federal forum. The origin of this rule, at least as to state judicial remedies is found in *Monroe v. Pape,* 365 U.S. 167 (1961).[17] There it was held that persons seeking damages for an unconstitutional search need not exhaust state tort remedies before gaining access to federal court. The Supreme Court stated that "[t]he federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked."[18] 365 U.S. at 183.

In later decisions, the Supreme Court extended the "no-exhaustion" rule of *Monroe to* §1983 claims where the only available state remedy was an inadequate administrative procedure. *McNeese v. Board Of Education,* 373 U.S. 668 (1963) ; *Damico v. California,* 389 U.S. 416 (1967) ; *King v. Smith,* 392 U.S. 309 (1968) ; *Houghton v. Shafer,* 392 U.S. 639 (1968) ; *Wilwording v. Swenson,* 404 U.S. 249 (1971) ; *Gibson v. Berryhill,* 411 U.S. 564 (1973) ; *See, Steffel v. Thompson,* 415 U.S. 452 (1974).

The doctrine of exhaustion is a discretionary rather than a constitutional rule in §1983 cases. There has been no allegation in this case that the civil service procedures

in the meaning of sec. 1983. This Court in *Kurtz v. City Of Waukesha,* 91 Wis.2d 103, 109, 280 N.W.2d 757 (1979) held that *Monell* should be given retroactive application.

[17] *Monell v. New York City Dept. Of Social Services, supra,* overruled that part of *Monroe v. Pape,* which held that local governments are not persons within the meaning of §1983. 436 U.S. at 700–701.

[18] The no-exhaustion of state judicial remedies has been limited to some extent in §1983 cases in federal courts once the state judicial processes have been invoked. *See, Moore v. Sims,* 442 U.S. 415, 99 S. Ct. 2371, 60 L. Ed.2d 994 (1979) ; *Huffman v. Pursue, Ltd.,* 420 U.S. 592 (1975). (Application of the doctrine of abstention).

available to Mr. Castelaz were inadequate, nor does he claim that the Board was biased, unable, or unwilling to hear his claim. The delay caused in this case cannot be attributed to the Board. *See, Gibson v. Berryhill,* 411 U.S. at 575 (fn. 14). We believe, that the no-exhaustion rule as applied to §1983 claims brought in state courts is not to be "woodenly" applied. We therefore follow the decisions of a number of the federal circuit courts of appeal which have held that, depending on the case, exhaustion of state administrative remedies may be required.[19] *Eisen v. Eastman,* 421 F.2d 560, 567–569 (2d Cir. 1969) ; *cert. denied,* 400 U.S. 841 (1970) ; *Blanton v. State University Of New York,* 489 F.2d 377, 383–384 (2d Cir. 1973) ; *Plano v. Baker,* 504 F.2d 595 (2d Cir. 1974) ; *Cf., Morgan v. LaVallee,* 526 F.2d 221, 223 (2d Cir. 1975) ; *Wagle v. Murray,* 546 F.2d 1329, 1332 (9th Cir. 1977) ; *Raper v. Lucey,* 488 F.2d 748 (1st Cir. 1973) ; *Secret v. Brierton,* 584 F.2d 823 (7th Cir. 1978).

In *Barry v. Barchi,* 443 U.S. 55, 99 S. Ct. 2642, 61 L. Ed.2d 365, 374 (1979), an action based on §1983,[20] the Supreme Court noted in response to an exhaustion argument that exhaustion will not be required when the challenge is primarily based on the adequacy of the administrative remedy, a situation not presented here. The decision, rather than resort to the broad dicta of earlier cases, assumes that administrative exhaustion may be required in §1983 cases. Also, in *Gibson v. Berryhill,* 411 U.S. 564, 574–575 (1973), the plaintiffs, licensed optometrists, filed a suit under §1983 to enjoin proceedings of

---

[19] For differing views on whether the Supreme Court's decisions rule out the exhaustion requirement whenever a complaint is styled as a §1983 action *see,* K. Davis, *Administrative Law Of The Seventies,* §10.01–1 (1976) ; *Compare, Developments In The Law Section 1983 And Federalism,* 90 Harv. L. Rev. 1133, 1264–1274 (1977) ; Comment, *Exhaustion Of State Administrative Remedies In Section 1983 Cases,* 41 U. Chi. L. Rev., 537 (1974).

[20] *Barchi v. Sarafan,* 436 F. Supp. 775, 776 (S.D.N.Y., 1977).

the Alabama Board of Optometry which had been instituted against them. They alleged that the Board was biased and could not provide them with a fair and impartial hearing. The Supreme Court held that exhaustion was not required because the clear import of the complaint was that the Board was unconstitutionally constituted and therefore an adequate administrative remedy was not available. But, it expressly left open the question whether the no-exhaustion rule in §1983 actions is "invariably the case" when the administrative procedure is clear and adequate. *Cf., Great American Federal S. & L. Assn. v. Novotny,* 442 U.S. 366, 99 S. Ct. 2345, 60 L. Ed.2d 957 (1979) (holding that 42 U.S.C., §1985(c) may not be invoked to redress violations of Title VII of the Civil Rights Act of 1964. To rule otherwise would allow a complainant to "avoid most, if not all of these detailed and specific provisions of the law," including the administrative and judicial review provisions of the Civil Rights Act.)

The constitutional question raised by Mr. Castelaz is whether he was dismissed based on the exercise of his First Amendment rights. The Board is given the power and the duty to protect civil service employees from "political" dismissals. Indeed, this was one of the primary purposes behind the development of the civil service laws. As a practical matter, most dismissals from civil service employment can be cast in terms of a §1983 action. To permit resort to the courts prior to allowing the Board to act would render meaningless one of the primary functions of the Board. We conclude that Mr. Castelaz, based on the allegations in his complaint, was required to exhaust his administrative remedies prior to seeking relief in state courts under §1983.

*By the Court.*—Judgment affirmed.