**James AMENDOLA, Plaintiff-Appellant,**

v.

**Richard SCHLIEWE, Charles Rude, and Wayne Koessl, Defendants-Appellees.**

No. 83–1065.

United States Court of Appeals, Seventh Circuit.

Argued June 12, 1983.

Decided April 12, 1984.

**80**

Walter W. Stern, Joling, Rizzo, Willems, Oleniewski, Stern & Burroughs, S.C., Kenosha, Wis., for plaintiff-appellant.

James R. Scott, Lindner, Honzik, Marsack, Hayman & Walsh, Milwaukee, Wis., for defendants-appellees.

Before BAUER and COFFEY, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.[*]

COFFEY, Circuit Judge.

The plaintiff James M. Amendola commenced this action under 42 U.S.C. §§ 1983 and 1985 against the defendants, Wayne Koessl (Chairman of the Kenosha County Board of Supervisors), Richard Schliewe (the Kenosha County Assessor), and Charles Rude (the personnel director for Kenosha County). The plaintiff claims that he was deprived of his constitutional right to due process of law under the Fourteenth Amendment when his employment as a county assessor was terminated without prior notice and hearing. The plaintiff asserts that pursuant to Wis.Stat. § 70.99 (1971) he had an enforcible expectation of continued employment and was thus entitled to due process of law in the termination procedure. He also argues that the

[*] The Honorable Anthony J. Celebrezze, Senior Circuit Judge for the United States Court of Appeals for the Sixth Circuit, is sitting by designation.

defendants should be estopped from denying his tenured status. At trial, the district court found that Wis.Stat. § 70.99 (1971) did not provide James Amendola with an enforcible expectation of continued employment and therefore dismissed his complaint. We affirm.

I.

James Amendola was employed as an appraiser by the City of Kenosha from October 4, 1961 to December 31, 1972. During that time, he passed two city civil service examinations and obtained tenure as a city employee. In August of 1972, Kenosha County adopted a county-wide assessment system pursuant to Wis.Stat. § 70.99 (1971).[1] Section 70.99 permitted counties to establish the office of county assessor upon adoption of a resolution or ordinance with an approving vote of at least two-thirds of the county board. The city, town and village assessors in counties

that adopted a county-wide assessment system were to continue in office for the purposes of completing the current year's assessment. The county assessor would then assume assessment responsibility for all subsequent years, and the prior city, town and village assessors would be divested of that responsibility. Wis.Stat. § 70.99(8) (1971).

To be eligible for employment on the staff of the county assessor under § 70.99, job applicants were required to pass a state administered comprehensive examination related to the work of a county assessor. An exception was made, however, for those persons who had been city, town or village assessors prior to the adoption of the county-wide system in their respective communities. Those persons having previous municipal assessor experience could be hired "without prior examination," but were required to pass the state examination within

1. The relevant portion of Wis.Stat. § 70.99, as it existed in 1971, is as follows:

"70.99 County assessor. (1) A county assessor system may be established for such county only by passage of a resolution or ordinance adopting such system by an approving vote of two-thirds of the entire membership of the county board. After passage of such enabling resolution or ordinance by the county board, the county executive, or the county administrator, or the chairman of the county board with approval of the county board, shall appoint a county assessor from a list of candidates that passed an examination. The persons selected for such listing shall first have been given a comprehensive examination related to the work of county assessor. A person appointed as county assessor shall thereafter have indefinite tenure and may be removed or suspended only for the reasons named in s. 17.14(1) or for such cause or causes as would sustain the suspension or removal of a state employe under state civil service rules. If employes of a county are under a county civil service program, the county assessor may, and any person appointed as a member of his staff shall, be incorporated into such county civil service program but tenure is dependent on the foregoing provision.

"(3) The state bureau of personnel shall recommend a reasonable salary range for the county assessor for each county based upon pay for comparable work or qualifications in such county. If by contractual agreement under s. 66.30 two or more counties join to

employ one county assessor with the approval of the secretary of revenue, the bureau of personnel shall recommend a reasonable salary range for the county assessor under such agreement. The department of revenue shall assist the county in establishing the budget for county assessor's offices, including the number of personnel and their qualifications based on the anticipated work load. The county assessor may hire without prior examination any person, who was a town, village or city assessor but shall give preference to assessors with 8 or more years of assessment work experience; or, he may so hire any person that was on the assessing staff including clerical staff of any such town, village or city assessor giving preference to assessing staff persons with 8 or more years of clerical or assessment work experience; or, he may so hire state supervisors of assessments including deputy supervisors of assessments. Any other person must pass an examination given by the bureau of personnel before the person can be employed by the county assessor. All persons on the staff of a county assessor that were hired under the 'without prior examination' provisions must successfully pass a civil service examination within 3 years after employment to retain their position on the staff of the county assessor unless they were previously under civil service in which case they may be retained. Any person who successfully passes such civil service examination shall thereafter have indefinite tenure of the same kind as that provided for the county assessor in sub. (1)."

three years of their employment in order *to retain* their position with the county. In addition, § 70.99 provided that persons who had been city, town or village assessors and were also previously under civil service could *retain* their position with the county assessor without ever being required to pass the state examination.[2] Along with the provisions that permitted the hiring and retention of assessors without prior examination, the statute expressly provided for the means of obtaining tenure:

"Any person who successfully passes such civil service examination shall thereafter have indefinite tenure of the same kind as that provided for the county assessor in sub. (1)."

Effective January 1, 1973, Amendola was employed by the Kenosha County Assessor's office where he performed essentially the same functions as he had in his prior position with the City of Kenosha. Since Amendola had been under civil service as a city employee, he was not required, under the terms of Wis.Stat. § 70.99 (1971), to take the state certification examination to be hired or retained as an employee of the county assessor. It was stipulated that Amendola never took the state certification examination for tax assessors.

On May 25, 1979, the plaintiff met with Mr. Koessl (Chairman of the Kenosha County Board of Supervisors), Mr. Schliewe (County Assessor for Kenosha County), and Mr. Rude (Personnel Director for Kenosha County), to discuss his employment with the county. Following that meeting, Amendola was terminated without prior notice or hearing.

At the plaintiff's request, a hearing was held on June 12, 1979, before the zoning committee of the Kenosha County Board of Supervisors to determine the propriety of his termination. Based in part on the advice of Kenosha County Corporation Counsel that the plaintiff was a tenured employee who was entitled to prior notice and a hearing before dismissal, the zoning committee voted unanimously to reinstate the plaintiff with full backpay and no loss of benefits. In accordance with that decision, Amendola was reinstated effective June 13, 1979, and received full backpay. He continued to be actively employed by Kenosha County until January 26, 1980, when he took a disability leave of absence. He voluntarily resigned a year later, on January 30, 1981.

Amendola commenced this suit in September of 1980 alleging that the absence of a pre-termination notice and hearing deprived him of his constitutional right to due process of law in the discharge procedure. The plaintiff maintains that he had tenure in his position with Kenosha County by virtue of his tenured status in his previous employment with the City of Kenosha and the provisions of Wis.Stat. § 70.99 (1971). In essence, Amendola argues that since the statute recognizes the qualifications of employees with the most job experience by giving them a preference in hiring and exempting them from the requirement of passing the state examination to retain their positions, it would be absurd to interpret the statute as denying tenure only to the most experienced employees. According to Amendola, it is implicit in Wis.Stat. § 70.99(1) and (3) that once the decision is made to retain an employee in the plaintiff's class (an individual with municipal experience and previously under civil service), the employee should be accorded tenure status without the requirement of an examination. He also argues that the defendants should be estopped from denying his tenured status.

The liability issue was tried to the district court on stipulated facts. Based on its interpretation of § 70.99 (1971), the court held that the plaintiff had no enforcible expectation of continued employment under Wisconsin law and, therefore, was not entitled to the procedural protection of the Fourteenth Amendment's Due Process Clause at the time his employment was terminated. It also found the plaintiff's estoppel argument to be without merit.

**2.** Since 1971 the language in the statute relating to the hiring of appraisal personnel without prior examination has been modified and finally repealed.

## II.

 The plaintiff's first claim is that he had an enforcible expectation of continued employment with the county assessor and therefore should have been accorded due process of law in the termination procedure. In *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972), the United States Supreme Court held that only certain types of interests are accorded procedural due process protection under the Fourteenth Amendment:

> "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are implicated, the right to some kind of prior hearing is paramount. But the range of interests protected by procedural due process is not infinite.

> \* \* \* \* \* \*

> "[T]o determine whether due process requirements apply in the first place, we must look not to the 'weight' but to the *nature* of the interest at stake.... We must look to see if the interest is within the Fourteenth Amendment's protection of liberty and property."

*Board of Regents v. Roth*, 408 U.S. at 569–71, 92 S.Ct. at 2705–2706 (emphasis original, footnote and citation omitted). "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits." *Id.* at 576, 92 S.Ct. at 2708. To have a property interest in a benefit, a person must have a legitimate claim of entitlement to it rather than merely a unilateral expectation of some benefit. *Id.* at 577, 92 S.Ct. at 2709. Furthermore, as pointed out by the *Roth* Court:

> "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits

and that support claims of entitlement to those benefits."

*Id.* See also *Hadley v. County of DuPage*, 715 F.2d 1238, 1241 (7th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 1000, 79 L.Ed.2d 232 (1984). Therefore, a public employee must have an enforcible expectation of continued employment under state law to trigger the due process requirement of pretermination notice and hearing. *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976).

 Under Wisconsin law, a public employee has no tenure in his employment absent civil service regulations or laws, or the protections of a contract or collective bargaining agreement authorized by statute. *Castelaz v. Milwaukee*, 94 Wis.2d 513, 520, 289 N.W.2d 259, 262 (1980); *Adamczyk v. Caledonia*, 52 Wis.2d 270, 273–75, 190 N.W.2d 137, 139 (1971). Amendola was admittedly not covered by a contract, collective bargaining agreement or any Kenosha County civil service system. He asserts, however, that he acquired tenure in his position with Kenosha County by virtue of his previous tenure status with the City of Kenosha and the provisions of Wis.Stat. § 70.99 (1971). As the district court correctly summarized:

> "The plaintiff argues that it would be unreasonable and contrary to the spirit of the civil service laws to interpret these provisions [§ 70.99] as denying tenure only to those employees 'with the most job experience,' namely, those who had previously worked on the assessing staff of a municipality and had obtained civil service status in such employment. He asserts that the statute recognizes the qualifications of such employees by giving them a preference in hiring and exempting them from the requirement of passing an examination to retain their jobs; therefore, the plaintiff contends, it would be an absurd interpretation of the statute as a whole to read it as denying tenure only to such employees."

 Our reading of § 70.99 (1971) leads us to a conclusion contrary to the plaintiff's contentions. The provision of § 70.99 upon

which Amendola relies most heavily, provides that any person with previous municipal assessor experience who, prior to employment with the county had attained civil service status, *may be retained* without passing an examination given by the State. The provision is concerned with retention, not tenure.

"All persons on the staff of a county assessor that were hired under the 'without prior examination' provisions must successfully pass a civil service examination within 3 years after employment to retain their position on the staff of the county assessor *unless they were previously under civil service in which case they may be retained.*"

Wis.Stat. § 70.99(3) (1971) (emphasis added). This permissive language indicates that the county had the option of retaining, without requiring an examination, those employees who had both prior municipal assessor experience and civil service status, but was not required to do so. This interpretation is consistent with the immediately following sentence in the statute which specifically provides for tenure: "Any person who successfully passes such civil service examination shall thereafter have indefinite tenure of the same kind as that provided for the county assessor in sub. (1)." Wis. Stat. § 70.99(3) (1971). The express language of the statute is clear. Amendola could be retained by the county without taking an examination, and if at any later time he did successfully pass the state certification examination, he would acquire indefinite tenure.

The fact that the plaintiff worked for the City of Kenosha as an assessor and had obtained tenure as a city employee prior to his employment with Kenosha County does not by itself entitle him, under the statute, to tenured status upon securing employment with the county assessor's office. Section 70.99 specifically requires that an applicant pass the state certification examination as a condition precedent to attaining tenured status. Thus, for those individuals in Amendola's position, the key to obtaining tenure with the county assessor's office under § 70.99 (1971) (as opposed to merely

being allowed to retain employment with the county assessor) was satisfactory completion of a civil service examination upon employment, *not* prior civil service status with a municipality. If the legislature had intended individuals like Amendola to be automatically tenured upon gaining employment with the county assessor, the statute would have specifically provided for such "tenure" rather than merely allowing for their "retention" at the county's discretion if they did not pass the certification examination.

Our conclusion that § 70.99 did not confer tenure status on Amendola is also supported by the overall structure and purpose of the legislation creating that section. Again, as the district court aptly stated:

"The preamble to the act creating the optional countywide assessor system indicates that the purposes of the act were to ensure that the assessment of property was uniform throughout the state and that assessors were chosen on the basis of training and ability. *See Thompson v. Kenosha Co.,* 64 Wis.2d 673, 685 [221 N.W.2d 845] (1974). The assessment process was to be a local government function with supervision by the state. In accordance with this last provision, the state retained control of the testing process by which assessors and members of their staffs were to be examined and certified. Given the goal of uniformity [of the property assessment process] and the state's retention of supervision of the assessment process, it seems unlikely that the legislature intended § 70.99 to confer automatic tenure on persons in the plaintiff's situation [i.e., employees who had not passed the state examination for certification of tax assessors]. This conclusion is buttressed by the consideration that under the plaintiff's interpretation, a *village* assessor with twenty years' experience but no civil service status would have to pass an examination to obtain tenure, while a *city* assessor with much more limited experience who had

civil service status would become tenured without examination."

We are in accord with this reasoning.

Finally, our interpretation of § 70.99 (1971) is supported by a Wisconsin Attorney General opinion rendered prior to the commencement of this lawsuit based on the facts of this case. While Amendola argues to the contrary, we believe this opinion deserves substantial deference. As this court stated in *Joint Sch. Dist. No. 1, etc. v. United States,* 577 F.2d 1089, 1092–93 (7th Cir.1978), "in matters of state statutory construction his [the Wisconsin Attorney General's] opinion is to be accorded great weight."

## III.

■ In the alternative, Amendola argues that the defendant should be estopped from denying that the plaintiff had tenure. Equitable estoppel requires a showing that the party seeking estoppel relied to his detriment upon some intentionally misleading statement or conduct of the party to be estopped. *Citation Cycle Co., Inc. v. Yorke,* 693 F.2d 691, 695 (7th Cir.1982); *Triple Interest, Inc. v. Motel 6, Inc.,* 414 F.Supp. 589, 595 (W.D.Wis.1976). The plaintiff concedes that the traditional elements of estoppel are not present in this case since he cannot demonstrate that he relied to his detriment on any specific representations made by the defendants. The plaintiff maintains, however, that reliance on specific representations is unnecessary to warrant estoppel in light of: (1) the

opinions provided by two separate Kenosha County Corporation Counsel to the county assessor indicating their belief that individuals in Amendola's position had tenure; (2) the fact that Amendola retained his status as senior appraiser when he was hired by the county assessor; and (3) the fact that he was never notified that an examination was necessary to obtain tenure with the county.[3] At oral argument, the plaintiff also argued that the preceding circumstances somehow gave rise to a status akin to *de facto* tenure.

■ In response to Amendola's first contention that he need not rely on specific representations to estop the defendants from contesting his tenured status, we note that the equitable estoppel requirement of detrimental reliance on specific representations or conduct is well established. Our review of the record fails to reveal any evidence in the stipulated facts establishing that representations were made to Amendola either that he would obtain tenure upon employment with the county assessor or that he would not be required to take the state certification examination to gain tenure. The plaintiff admitted he had no knowledge of the two Corporation Counsel opinions prior to his termination. The fact that he retained his senior appraiser status and was not notified of the need to take an examination does not give rise to any statement or action that he could have reasonably interpreted as conferring tenure and upon which he relied to his detriment.[4] We

3. The plaintiff analogizes his situation to that of the plaintiff in *State ex rel. Thein v. Milwaukee,* 229 Wis. 12, 281 N.W. 653 (1938), wherein the Wisconsin Supreme Court blocked a tardy challenge to a civil service determination. In *Thein,* the Wisconsin Supreme Court stated that to reverse a decision on seniority rights more than ten years after they were determined would be an unjustifiable interference with those rights and would be contrary to the principle of security which is an important consideration in the civil service law. It should be pointed out that the procedure regarding seniority rights had been communicated to and relied upon by the plaintiff in *Thein.* Amendola's reliance on *Thein* is misplaced for two reasons: (1) unlike the plaintiff in *Thein* who had, in fact, attained a certain level of seniority and then had those

established seniority rights ignored by the defendant, Amendola never obtained any tenured status under § 70.99 while employed with the county and therefore no *previously established* rights were denied or ignored; and (2) unlike *Thein,* where a new seniority schedule was established and all involved acted in accordance with that schedule, there is no evidence of any specific representation to the plaintiff that he had tenure and upon which he relied to his detriment.

4. Amendola appears to argue in his reply brief that the misleading conduct on which he relied was the defendant's "silence" in (1) not informing him of the need to take a civil service examination upon being employed by the county assessor to obtain tenure; and (2) not inform-

therefore conclude that Amendola's estoppel argument is without merit.[5]

Turning to Amendola's contention that he had a status akin to *de facto* tenure, we note that in *Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), the United States Supreme Court recognized that *de facto* tenure might exist in an employment relationship and that such tenure could create an enforcible expectation of continued employment. *Perry* involved a non-tenured professor who, after teaching in the Texas state college system for ten years, was denied a renewal of his annual one-year contract without a prior hearing. He alleged that he had a property interest which, "though not secured by a formal contractual tenure provision, was secured by a no less binding understanding fostered by the college administration. In particular, the respondent alleged that the college had a *de facto* tenure program, and that he had tenure under that program." *Id.* at 599–600, 92 S.Ct. at 2699. The plaintiff in *Perry* based his assertion of *de facto* tenure on his employer's official Faculty Guide, which contained a provision stating that a faculty member should feel that he had "permanent tenure as long as his teaching services [were] satisfactory and as long as he display[ed] a cooperative attitude toward his co-workers and his superiors ...." *Id.* at 600, 92 S.Ct. at 2699.

■ The *Perry* Court stated that the absence of a written contract with an explicit tenure provision does not always foreclose the possibility that the employee has a property interest in his employment. According to the Court:

" '[P]roperty' interests subject to procedural due process protection are not limited by a few rigid, technical forms. Rather, 'property' denotes a broad range of interests that are secured by 'existing rules or understandings.' "

*Id.* at 601, 92 S.Ct. at 2699 (*quoting Roth*, 408 U.S. at 577, 92 S.Ct. at 2709). The Court recognized that agreements may be implied from the employer's words and conduct in light of the surrounding circumstances, but those words and conduct must give rise to "mutually explicit understandings that support his claim of entitlement to the benefit." *Id.* at 601–02, 92 S.Ct. at 2699. In other words, as the Court stated in *Roth*, an employee must have a "legitimate claim of entitlement" to continued employment and not merely a unilateral and subjective expectancy, to be accorded the protection of procedural due process. *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709.

■ In *Perry*, the employee claimed he legitimately relied on provisions and guidelines *promulgated* by his employer regarding his employment. No such affirmative representations are reflected in the record of the present case. The plaintiff seeks to rely on two letters delineating the opinion of two separate Kenosha Corporation Counsel regarding the tenured status of employees in his position. The Corporation Counsel's first opinion letter to the county assessor's office stated, among other things, that employees in the office of the county assessor have tenure under Wis.Stat. § 70.99. Amendola admits, however, that he had no knowledge of that opinion prior to the commencement of this

ing him of the county's "change of position" on the issue of tenure with regard to employees in Amendola's situation. He fails to cite any authority establishing that the county had a duty to inform him of the need to pass a civil service examination and we refuse to infer one. Thus, reliance on the county's "silence" regarding the need for such an examination was not reasonable and does not provide an adequate basis for this court to estop the defendants from contesting his tenure status. Turning to the county's "change of position" regarding tenure of individuals in Amendola's situation, we note that Amendola admits ignorance of the county's po-

sition prior to his termination and therefore that "change of position" also does not justify an invocation of this court's equitable power of estoppel.

5. Amendola appears to argue that even if this court refuses to apply traditional equitable estoppel to the defendants, "equity still commands that defendant[s] be precluded from reversing the County's position at this late date." We do not agree that equity demands the relief requested by the plaintiff and we therefore decline to invoke its power in this case.

action. The Corporation Counsel's second opinion letter was rendered on June 12, 1979, after Amendola's termination. Neither of these letters can form the basis of *de facto* tenure since it is apparent from the stipulated facts that Amendola had no knowledge of them *prior* to his termination. The other facts upon which Amendola allegedly based his belief that he had attained at least *de facto* tenure with the county—(1) that he retained his senior appraiser status when he began working for the county, (2) that he performed essentially the same job function for the county as he did for the city, (3) that he was never notified that an examination was required to obtain tenure, and (4) that he had had civil service status with the City of Kenosha—also do not justify his conclusion. At best, these facts merely establish that Amendola was under a unilateral impression that he was tenured. Absent any affirmative explicit representation to the plaintiff on the part of the defendants, the plaintiff's unilateral and subjective beliefs do not rise to the level of a "legitimate claim of entitlement to job tenure," as there was simply no mutually explicit understanding between the county and Amendola. *Perry,* 408 U.S. at 601, 92 S.Ct. at 2699. Thus, his *de facto* tenure claim must also fail.

### IV.

We hold that the plaintiff has failed to establish either that he was denied a property interest warranting procedural due process protection, or that under the doctrine of equitable estoppel the defendants should be precluded from contesting his tenure status, therefore the judgment of the district court is affirmed.