**Julie Ann LYMAN, Plaintiff,**

v.

**Dr. Harry STRASBURG, et al., Defendants.**

**No. 84 C 5913.**

United States District Court, N.D. Illinois, E.D.

Nov. 14, 1986.

Marilyn F. Longwell, Kerr & Longwell, Chicago, Ill., for plaintiff.

Patricia J. Whitten, Karen Gatsis Anderson, Mary Denise Cahill, Bd. of Educ., City of Chicago, Chicago, Ill., for defendants.

## MEMORANDUM ORDER

BUA, District Judge.

The matter before this Court concerns defendants' motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated herein, defendants' motion is granted and plaintiff's complaint is dismissed in its entirety.

### I. FACTS

Plaintiff Julie Ann Lyman was employed by the Board of Education of the City of Chicago (Board) from approximately March 1, 1976 to July 4, 1983. Initially, Lyman received a temporary appointment as a technical writer and continued in this position until May 1980. At that time, Lyman was given notice that she was being transferred to the Chief Financial Officer's staff. Subsequently, in August 1980, Lyman was appointed to serve as Staff Assistant to the Chief Financial Officer, Joseph Mahran. Sometime in June 1983, the new Chief Financial Officer, defendant Dr. Harry Strasburg, informed Lyman that her employment would terminate July 4, 1983 due to a budget cut. The Board then took action to terminate plaintiff's employment.

Lyman filed a multicount complaint against various defendants alleging violations of her constitutional and statutory rights to employment. After this Court's March 27, 1985 order, 605 F.Supp. 193, dismissing Lyman's complaint, Lyman filed an amended complaint against Dr. Harry Strasburg and eight present or former members of the Board asserting two claims. Count I is predicated on 42 U.S.C. § 1983 and the Fourteenth Amendment of the United States Constitution. Count II is a pendent state law claim asserted under Ill.Rev.Stat., ch. 122, § 34–12.

At the core of both claims is Lyman's assertion that she was a career service employee of the Board who was covered under the following provisions of Ill.Rev. Stat. ch. 122, § 34–15:

No civil service employee shall be removed except for cause. The board by a vote of a majority of its full membership must first approve a motion containing written charges and specifications presented by the general superintendent of schools. Such motion shall contain a request to the State Board of Education to schedule a hearing on these charges before an impartial hearing officer....

Lyman contends § 34–15 gave her a right to continued employment unless terminated for cause, thus creating a constitutionally protected property interest in her employment. Both sides agree that Lyman was never given a hearing prior to her termination. Lyman argues defendants' actions deprived her of a protected property interest without due process of the law and violated her statutory right to employment under § 34–15. Finally, Lyman contends defendants' actions violate the Equal Protection Clause of the Fourteenth Amendment.

### II. DISCUSSION

A motion for summary judgment may only be granted when the moving party establishes that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56; *County of Milwaukee v. Northrup Data Systems*, 602 F.2d 767, 774 (7th Cir.1979). Although complete agreement may not exist with regard to all facts asserted by the parties, this Court agrees that there are no material facts at issue and finds the facts set forth in Part I of this order undisputed. Thus, defendants' motion for summary judgment is proper for this Court to consider.

■ At the threshold of Lyman's claims is the issue of her status under § 34–15 as a career service employee. Since the employment relationship between an employer and employee is generally terminable at will, Lyman must qualify under § 34–15 or demonstrate some protectable property in-

terest to survive defendants' motion. The Board's Handbook of Practices and Procedures for Career Service Employees (Handbook) sets forth the following requirements for attaining career service status: (1) successful participation in a career service examination given by the Department of Personnel of the City of Chicago for a particular job title; (2) probational appointment to a career service position; (3) successful completion of a one-year probational period. Additionally, Board rules require all career service appointments to be made by a majority vote of the full membership of the Board. Board Rules, art. 4, § 4–1.

The undisputed facts show Lyman never fulfilled any of the enumerated prerequisites for career service status. At no time did Lyman take a required career service examination or receive a probational appointment to a career service position. In fact, Lyman's various appointments at the Board put her on notice that she was not progressing toward career service status. Lyman was initially hired at the Board as a provisional or temporary employee in the capacity of technical writer. In 1980 when Lyman was transferred to the office of the Chief Financial Officer, the staffing notice forwarded to Lyman stated her position as "temporary." When Lyman was appointed in 1981 to Staff Assistant to the Chief Financial Officer, the staffing report again indicated the provisional or temporary nature of her position. Although Lyman contends her six years of satisfactory performance at the Board led her to reasonably expect she had attained career service status, Lyman was given notice with each position change that she was not a career service employee. Since career service employees can be discharged only for cause and only after a hearing, the Board has an interest in according such status to a limited number of individuals. Lyman's expectations simply do not measure up to the Board's requirements for this special status. As such, Lyman is not entitled to the privileges and protections accorded to career service employees under § 34–15. Accordingly, Count II of Lyman's complaint is dismissed.

Lyman's second argument is that even if she is not entitled to the special employment rights under § 34–15, the circumstances surrounding her six years of employment at the Board created a constitutionally protected property interest which was deprived without due process. Lyman contends that certain provisions of the City of Chicago Personnel Code which were allegedly not followed by the Board together with her six years of satisfactory service support a legitimate claim of entitlement due Fourteenth Amendment protection. Specifically, Lyman points to provisions in the City of Chicago Personnel Code which allow provisional or temporary appointments for periods up to nine months. Since each of her provisional appointments exceeded nine months and she was employed for over six years at the Board, Lyman asserts a protectable property interest in continued employment arose.

Examining Lyman's assertions, this Court is unable to accept the contention that the Board's failure to dismiss Lyman after nine months of service provides a statutory basis for the creation of a protectable property interest. This Court has already determined Lyman failed to meet the requirements for securing § 34–15 status. If any basis exists for Lyman's asserted property interest in continued employment, it rests on some implied contractual or equitable grounds.

To invoke the protection of procedural due process, an employee must have more than a unilateral and subjective expectancy, but a legitimate claim of entitlement to continued employment. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Although property interests in continued public employment are commonly founded on specific statutory or express contractural grounds, the Supreme Court has extended due process protection to claims of entitlement based on an implied contract arising from certain rules and mutually explicit understandings. *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33

L.Ed.2d 570 (1972). *Perry* involved a nontenured professor who, after teaching in the Texas state college system for ten years, was denied a renewal of his annual one-year contract without a prior hearing. *Id.* at 594–95, 92 S.Ct. at 2696. Acknowledging that his asserted property interest in continued employment was not based on any explicit statutory or contractual provision, the professor alleged that certain rules and unwritten understandings at the university accorded him with *de facto* tenure. *Id.* at 599–600, 92 S.Ct. at 2698–99. Specifically, the professor claimed that a faculty handbook stating that faculty members should feel they had permanent tenure as long as they performed their teaching duties satisfactorily and maintained a cooperative attitude created a property interest in continued employment protected by due process. *Id.* at 600, 92 S.Ct. at 2699.

Refusing to dismiss the professor's claims, the Supreme Court agreed that such a *de facto* tenure system could exist under the alleged circumstances in the case. According to the Court, an agreement could be implied from the employer's words and conduct in light of the surrounding circumstances which gave rise to a legitimate claim of entitlement to continued employment at the university. *Id.* at 601–02, 92 S.Ct. at 2699–700. Thus, when a public employee legitimately relies on an employer's affirmative representations of continued employment, a mutually explicit understanding may be formed creating a protectable property interest which cannot be deprived without procedural due process.

Turning to the facts in the present dispute, Lyman attempts to assert that certain rules and understandings existing at the Board which she relied upon gave her a legitimate claim of continued employment. Lyman appears to contend that rules limiting temporary appointments at the Board to nine months formed the basis of an understanding she would be entitled to continued employment if she was retained after the nine-month period. Yet, the rules Lyman points to are incapable of being interpreted as affirmative representations of continued employment by the Board. *Perry* requires the existence of a *mutually* explicit understanding to support a legitimate claim of entitlement. Here, Lyman's assertions merely form a unilateral and subjective expectancy which is not cognizable as a protected property interest under the Fourteenth Amendment.

■ The third basis for recognizing Lyman's claims stems from the doctrine of equitable estoppel. Essentially, Lyman argues that because the Board did not dismiss her after nine months, the Board is now estopped from denying her continued employment. However, equitable estoppel requires the party asserting estoppel to have relied to her detriment on some intentionally misleading statement or conduct of the party to be estopped. *Amendola v. Schliewe*, 732 F.2d 79, 85 (7th Cir.1984). Lyman has failed to assert any specific representation by the Board that she was entitled to the status and protection afforded career service employees without first meeting the formal requirements. As the court held in *Amendola v. Schliewe*, the fact an employee may not have been notified a civil service exam was necessary to attain protected status does not constitute sufficient intentionally misleading conduct to invoke equitable estoppel. *Id.* at 85–86 n. 4. Similarly, Lyman's assertion she was not given the opportunity to participate in an appropriate civil service exam does not require the Board be estopped from denying her continued employment. As Lyman fails to assert any intentionally misleading representation or conduct upon which she could have reasonably relied, the doctrine of equitable estoppel does not apply. Thus, the Board was entitled to dismiss Lyman without a prior hearing as no property interest protected by the Fourteenth Amendment in continued employment was possessed by Lyman.

■ Lyman's final argument asserts that the Board has a practice of appointing employees to temporary positions in excess of nine months. Lyman contends this practice creates a separate classification of pub-

lic employees which violates the Equal Protection Clause of the Fourteenth Amendment. Aside from Lyman's failure to properly plead facts supporting her assertion of the Board's alleged practice of hiring provisional employees for terms in excess of nine months, Lyman's equal protection claim cannot withstand constitutional scrutiny. Even assuming such a practice leading to a separate classification of long term provisional employees exists at the Board, it has a rational relation to a legitimate governmental purpose. As career service status accords special continued employment privileges, the Board has an interest in restricting such status to a limited number of employees. The Board is entitled to condition the attainment of this property right on the fulfillment of certain uniform, formal prerequisites. Allowing employees career service status solely on the basis of longevity in a provisional position would severely undercut the Board's legitimate policy and violate the proposition that longevity alone does not create a property interest. *Perry v. Sindermann,* 408 U.S. at 601–02, 92 S.Ct. at 2699–700; *Hadley v. County of DuPage,* 715 F.2d 1238, 1244 (7th Cir.1983) (fourteen years of continuous public employment does not give rise to an entitlement to continued employment as longevity alone does not create a property interest). Thus, Lyman's equal protection claim is without merit.

### III.  CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted on all counts of plaintiff's amended complaint.

IT IS SO ORDERED.