# In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 02-3727

JAMES M. DIXON,

*Plaintiff-Appellant,*

v.

CITY OF NEW RICHMOND, MARK SAMELSTAD,
DAVID H. LEVI, ET AL.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 02 C 115—**John C. Shabaz**, *Judge.*

_____

ARGUED APRIL 10, 2003—DECIDED JULY 2, 2003

_____


Before BAUER, RIPPLE, and EVANS, *Circuit Judges.*

BAUER, *Circuit Judge.* Plaintiff James M. Dixon filed an action under 42 U.S.C. § 1983, alleging due process violations by the City of New Richmond, Wisconsin, Police Department and its officials (collectively, "NRPD"). He claimed the NRPD suspended, demoted, removed, and/or constructively discharged him from his position as a part-time police officer after charges were filed against Dixon by the Village of Somerset, Wisconsin, Police Department for violations of alcoholic beverage laws, misconduct related to a Bureau of Transportation Safety grant, falsification of time sheets, and theft of evidence. We affirm the district

court's decision to grant summary judgment in favor of the NRPD.

## BACKGROUND

Dixon began his law enforcement career in the summer of 1998 as a part-time police officer with the NRPD and the Village of Somerset Police Department ("Somerset"). He became a full-time officer with Somerset in May 1998 and continued working on a part-time basis for the NRPD, the North Hudson, Wisconsin, Police Department, and the St. Croix County Sheriff's Department. As a part-time officer for the NRPD, Dixon was scheduled to work strictly on an as-needed basis. The NRPD Chief of Police made all staffing decisions, and shifts were assigned according to departmental needs and the availability of work.

In January 2001, an employment complaint was filed against Dixon in Somerset, alleging violations of alcoholic beverage laws, misconduct related to a Bureau of Transportation grant, falsification of time sheets, and theft of evidence. Shortly after these charges were filed, Dixon's attorney, R. Michael Waterman, contacted the NRPD and requested that the NRPD reserve judgment until the Somerset matter concluded. Police Chief David H. Levi informed Waterman that the NRPD would do so but that Dixon would not be assigned part-time shifts until the Somerset matter concluded.

Pursuant to Wisconsin law (Wis. Stat. § 62.13), Somerset conducted a hearing in February 2001. On February 15, 2001, Somerset's Police Review Board unanimously determined that Dixon committed the acts alleged, with the exception of the alcohol beverage law violations, and terminated Dixon's employment. Dixon then availed himself of the procedures set forth by Wis. Stat. § 62.13(5) and ap-

pealed Somerset's decision to the St. Croix County Circuit Court.

In June 2001, Chief Levi retired from the NRPD, and in September 2001, Mark Samelstad became the new Chief. After Chief Samelstad's appointment, former-Chief Levi informed him about Dixon's situation and his agreement to defer disciplinary action until completion of the proceedings in Somerset. Shortly after being appointed, Chief Samelstad issued new credentials to all NRPD officers except Dixon. In October 2001, Chief Samelstad contacted Dixon and requested that Dixon return his credentials. Dixon did not comply with the request and stated that he wished to speak with his attorney. In response to Chief Samelstad's request, but prior to the circuit court's ruling on Dixon's appeal, Waterman sent a letter to Chief Samelstad on October 11, 2001, stating that Dixon still considered himself a part-time NRPD officer and was willing to accept part-time shifts.

On December 31, 2001, the Wisconsin circuit court affirmed Somerset's decision, finding sufficient evidence to sustain the charges and termination of Dixon's employment. In late January 2002, Dixon personally contacted Chief Samelstad and expressed his interest in working part-time shifts for the NRPD. Chief Samelstad replied to Dixon on February 12, 2002, and informed Dixon that he was still listed as an NRPD part-time officer but that his status would be reviewed.

Chief Samelstad notified Dixon on February 20, 2002, that an internal investigation would be conducted concerning Dixon's dismissal from the Somerset Police Department. Chief Samelstad also afforded Dixon an opportunity to meet and present his version of the events at issue, but Dixon failed to attend a mutually-agreed upon meeting the two scheduled for February 25, 2002. Dixon filed the in-

stant lawsuit on February 22, 2002, alleging that the NRPD had denied him due process of law by suspending, demoting, removing, and/or constructively discharging him in January 2001 when Chief Levi took Dixon's name off the part-time officers' call list and when Chief Samelstad requested that Dixon return his NRPD credentials in October 2001.

Formal disciplinary proceedings against Dixon began on April 25, 2002, when Chief Samelstad filed a statement of charges with the New Richmond Police and Fire Commission ("NRPFC"), and a hearing before the NRPFC was scheduled for May 22, 2002. Dixon responded to these charges by sending a letter to the NRPFC on May 20, 2002, stating that he had been constructively discharged by the NRPD. Dixon also failed to attend the May 22 hearing, which concluded with the NRPFC terminating his employment with the NRPD on May 23, 2002.

In late July and early August 2002, both parties moved for summary judgment on Dixon's § 1983 claims. The district court determined that Wisconsin law provides Dixon with a protected property interest in his job but that Dixon had not been deprived of that interest because the NRPD had not suspended, demoted, removed, or constructively fired him. The court further found that, even if Dixon had been deprived of a protected property interest in January 2001, he was only entitled to post-deprivation procedures according to *Parratt v. Taylor*, 451 U.S. 527 (1981), which took place via the May 2002 hearing before the NRPFC that Dixon refused to attend. Thus, Dixon's motion was denied and the NRPD's motion was granted. This appeal ensued.

## ANALYSIS

We undertake a de novo review of the district court's decision to grant summary judgement in favor of the NRPD

and Chiefs Levi and Samelstad, viewing the record in a light most favorable to Dixon and drawing all reasonable inferences in his favor. *Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c) (2003). A genuine issue of material fact exists if there is sufficient evidence in favor of the nonmoving party to permit a jury to return a verdict for that party. *Baron*, 195 F.3d at 338.

Our inquiry into Dixon's procedural due process claim begins with determining whether he was deprived of a protected property interest, which involves a two-fold examination: a) whether a protected property interest exists; and b) whether Dixon was deprived of that protected interest. If a deprivation has occurred, we evaluate what process is due Dixon before he can be deprived of that entitlement. *Fittshur v. Vill. of Menonmonee Falls*, 31 F.3d 1401, 1405 (7th Cir. 1994). Only certain types of property interests are protected by the Fourteenth Amendment. To be protected, a person must have a legitimate claim of entitlement rather than only a unilateral expectation of some benefit. *Amendola v. Schliewe*, 732 F.2d 79, 83 (7th Cir. 1984). We look to independent sources, such as state law, to determine the scope of property interests. Thus, "a public employee must have an enforceable expectation of continued employment under state law to trigger the due process requirement of pretermination notice and hearing." *Id.*

Under Wisconsin law, the inquiry turns on whether Dixon's employment was "at-will" or whether he could be terminated only "for cause," the latter receiving due process protection. *Flynn v. Kornwolf*, 83 F.3d 924, 926 (7th Cir. 1996). The Wisconsin Supreme Court has held that the

state legislature removed police officers from the scope of the employment at-will doctrine by enacting § 62.13, which grants them procedural protections that prevent wrongful discipline or discharge. Wis. Stat. § 62.13(5) (2003); *Larson v. City of Tomah*, 532 N.W.2d 726, 728-29 (Wis. 1995). Accordingly, this Court has held that § 62.13(5) confers a protected property interest upon Wisconsin police officers and firefighters. *Schultz v. Baumgart*, 738 F.2d 231, 235 (7th Cir. 1984).

The parties do not dispute that Dixon enjoyed a protected property interest in his position as a part-time officer with the NRPD by virtue of § 62.13(5). Dixon contends that Chief Levi's decision to remove him from the call list in January 2001 amounted to a suspension and that Chief Samelstad's request that Dixon return his NRPD credentials in October 2001 amounts to constructive discharge, demotion, or removal. The NRPD vigorously disputes, however, whether Dixon was deprived of a property interest. We find the NRPD's position more persuasive.

Dixon does not dispute any of the material facts but simply argues that Chief Levi's actions in January 2001 amount to a suspension. As a matter of law, we cannot agree. First, Dixon's attorney (Waterman) contacted Chief Levi after the charges in Somerset were filed against Dixon and requested that the NRPD reserve judgment until the Somerset situation had been resolved. Keeping with Dixon's request, Chief Levi deferred any disciplinary proceedings with the NRPD but informed Waterman that he would not call Dixon for part-time shifts while the Somerset charges were pending. Chief Levi did not institute formal disciplinary procedures against Dixon because he was not disciplining Dixon. Tellingly, Dixon did not attempt to invoke his rights under § 62.13(5) at this time but waited over one year until February 2002 before claiming that Chief Levi had suspended him (presumably because Dixon did not

believe Chief Levi had suspended him but instead believed that Chief Levi had reasonably complied with his request).

Second, part-time officers receive work with the NRPD on an as-needed basis, and the Chief of Police retains sole discretion regarding staffing needs. Chief Levi's decision to remove Dixon from the call list does not amount to a suspension. Dixon was still listed as an officer with the NRPD on all personnel and budgetary records throughout 2001 and until May 2002 when formal disciplinary proceedings were completed. Dixon simply was not assigned a part-time shift while serious charges against him were pending in another town.

Similarly, we do not find that Chief Samelstad's actions deprived Dixon of a protected property interest. We recognize four types of job termination: 1) outright discharge; 2) coerced resignation; 3) constructive discharge; and 4) constructive resignation. *Patterson v. Portch*, 853 F.2d 1399, 1405-06 (7th Cir. 1988). Dixon alleges that Chief Samelstad's request in October 2001 that Dixon return his NRPD credentials amounts to demotion, removal, or constructive discharge. Dixon's rank, responsibilities, and pay were not reduced by Chief Samelstad, so his claim that a demotion occurred fails. We interpret Dixon's argument that he was "removed" as one for outright discharge, but do not find the argument persuasive. The NRPD did not institute formal disciplinary proceedings until April 2002, and Dixon was not terminated by the NRPFC until late May 2002. There was no discharge in October 2001.

Constructive discharge occurs when the employee quits because working conditions with his employer become "simply intolerable." *Lindale v. Tokheim Corp.*, 145 F.3d 953, 955 (7th Cir. 1998). Here, Chief Samelstad maintained the agreement reached between Dixon and Chief Levi while the Somerset charges were pending. He did not return Dixon's name to the call list but continued to consider Dixon a part-

time officer with the NRPD. In fact, communication in January and February 2002 between Chief Samelstad, Dixon, and Waterman shows that Chief Samelstad directly informed Dixon that he was still considered an officer with the NRPD and that his status with the department would not be reviewed pending the resolution of the Somerset situation. Because this agreement was reached at Dixon's request, he cannot claim it was "simply intolerable."

Chief Samelstad also requested that Dixon return his NRPD credentials, but Dixon did not comply. After making the initial request, Chief Samelstad did not pursue the issue, although he issued new credentials to NRPD officers in the fall of 2001, leaving out Dixon. Again, we note that Dixon did not complain about this request until several months after it was made. Certainly, Dixon was aware of the safeguards established by § 62.13(5)—because he availed himself of them with respect to the Somerset charges—so he cannot claim that he was unaware Wisconsin law afforded him due process protections if he felt aggrieved.

We also find it compelling that Dixon testified in the Somerset proceedings that he was still a part-time officer with the NRPD. And as late as January 2002, Dixon contacted Chief Samelstad and expressed a willingness to work part-time shifts and update his credentials with the NRPD. We find it difficult to believe that Dixon could have considered himself terminated at any point prior to the institution of formal charges by Chief Samelstad in April 2002. The facts simply do not show that Dixon quit his job because the NRPD made his work environment "simply intolerable;" so he could not have been constructively discharged.

Accordingly, we find that Dixon was not deprived of a protected property interest by the actions of the NRPD or its officials, and because we find no deprivation, we need not address the applicability of *Parratt v. Taylor*, 451 U.S.

527 (1981). The grant of summary judgment in favor of the NRPD is AFFIRMED.


A true Copy:
    Teste:

                _____
                *Clerk of the United States Court of*
                      *Appeals for the Seventh Circuit*